IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRO-TECH CORPORATION t/a | : | CIVIL ACTION |
| THE PUROLITE COMPANY, *et al.* | : | |
| | : | |
| v. | : | |
| | : | |
| THERMAX, INC. d/b/a THERMAX | : | |
| USA LTD, *et al.* | : | NO. 05-2330 |

**MEMORANDUM OPINION**

CAROL SANDRA MOORE WELLS                                                    August 10, 2007
UNITED STATES MAGISTRATE JUDGE

      Thermax, Defendants, on June 4, 2007, filed this motion for sanctions against Purolite, Plaintiff. Thermax alleges that Jacob Brodie, Purolite's Vice President, violated this court's June 1, 2006 order (Document No. 124), which barred any party from disclosing information concerning this litigation in any documents accompanying third party subpoenas.  A few days after Defendants had served third party subpoenas on numerous non-party Purolite customers Mr. Brodie sent a letter (Motion Exh. 4) to each subpoenaed entity, stating Plaintiff's view of the ongoing litigation.  Defendant's Motion for Sanctions based on this letter is denied for three reasons:  (1) the letter did not accompany any subpoenas;  (2) the First Amendment protects most of the information disseminated, and;  (3) all salient information contained in the letter appeared  in a March 7, 2007 Purolite press release that has remained posted on Purolite's website.

**I.**     **Sanctions Under Fed. R. Civ. P. 37**

      The first issue to be addressed is whether Fed. R. Civ. P. 37 authorizes sanctions based on a party's violation of a protective order entered under Fed. R. Civ. P. 26(c).  Although no subsection of Fed. R. Civ. P. 37 explicitly provides for such sanctions, Purolite does not dispute that such sanctions could be imposed. Moreover, caselaw suggests viability of this remedy. S*ee  e.g.  Coleman v. Sears, Roebuck & Co.*, 221 F.R.D. 433, 435-36 (W.D. Pa. 2003).[1]

**II.**     **Jacob Brodie's Letter Does Not Accompany a Third Party Subpoena**

---

[1]In *Coleman*, the court concluded that, before sanctioning a party under Fed. R. Civ. P. 37 for violating a Fed. R. Civ. P. 26(c) protective order, the court would have to consider and balance three factors:  (1) willfulness and bad faith of the disobeying party, (2) prejudice to the moving party, and (3) the effectiveness of lesser sanctions.  *Coleman*, 221 F.R.D. at 436 (citing *Estate of Spears v. IRS*, 41 F.3d 103, 111 (3d Cir. 1994)).  Thus, a pre-condition for applying Fed. R. Civ. P. 37 sanctions is a party's violation of a Fed. R. Civ. P. 26(c) protective order.  As will be explained, *see infra* Section II, Mr. Brodie's letter does not violate the court's June 1, 2006 order, so sanctions are inappropriate.

This court's June 1, 2006 order bars parties from sending, along with third party subpoenas, additional communications that divulge confidential or improper information regarding events that have transpired during litigation. Defendants urge the court to construe Mr. Brodie's letter that was sent to his (Purolite's) customers who received third party subpoenas from Thermax in May 2007 as "accompanying" his party opponent's subpoenas. Defendants initially argue that, since Mr. Brodie's letter was tailored for and disseminated only to Purolite's customers who were third party subpoena recipients, directly referenced the subpoenas therein, and purported to explain the subpoenas and the events precipitating the subpoenas, it accompanied the subpoena. Defs.' Mem. of Law at 3. Purolite, in its initial response, noted that the primary definition of "accompany" is "to go with as a companion." Pl.'s Mem. in Opposition at 3. Defendants counter that based upon secondary definitions of "accompany," that is, "to add to; supplement" and "to cause to be in association with," Mr. Brodie's letter accompanied their own subpoenas. Defs.' Reply Mem. of Law at 3 n.1. Such a strained interpretation is untenable.

The fact that Brodie's letter addressed and explained the third party subpoenas does not make his letter "accompany" subpoenas served by a party opponent. This interpretation contravenes the intent of this court's June 1, 2006 order, which was to prohibit parties, under the guise of sending out subpoenas, from attempting to gain favor or to persuade potential witnesses to respond in a particular fashion. This court contemplated the primary definition of "accompany"– "to go along or in company with." *The Random House College Dictionary* at 9 (1980). Mr. Brodie's non-contemporaneous missive, sent several days after Plaintiff's subpoenas had been served clearly did not accompany those subpoenas. Secondary definitions of accompany also connote issuance at or about the same time with intent (presumably by the author) to support one with the other.[2] Accordingly, Mr. Brodie's letter did not accompany Defendants' third party subpoenas, and hence, did not violate the June 1, 2006 order and sanctions cannot be imposed.

**III.   First Amendment Protections**

---

[2] One secondary definition of accompany is "to be or exist in association with." *The Random House College Dictionary* at 9 (1980). For example, "Thunder accompanies lightning." *Id.* This clearly indicates that the thunder and lightning are almost contemporaneous, not days apart. Another secondary definition is "to put something else in association with or together with (usually fol. by *with*)." *Id.* The example for this definition is "He accompanied his speech with gestures." *Id.* Again, the gestures and speech are contemporaneous, not days apart.

Purolite raised and the parties briefed significant First Amendment questions regarding Mr. Brodie's letter to his customers. If the letter were deemed to accompany Thermax's subpoenas, sanctions would, nevertheless, be denied on Constitutional grounds.

Mr. Brodie's letter generally described the ongoing litigation, and specifically stated that Defendant Narvinder Sachdev stole and later accessed several thousand Purolite documents on a laptop computer at Thermax, Ltd.'s facilities in India. Defendant Sachdev testified to these facts in open court at a September 23, 2005 hearing before Judge Rufe. (N.T. 9/23/05 at 21-26, 34-39). Other information in the letter, such as why Purolite filed this lawsuit, reiterates facts stated in the complaint and amended complaint. Mr. Brodie's statement that "We are convinced that Thermax kept and is using our technology. Evidence we have uncovered supports that conclusion," is not contained in pleadings or court transcripts and, quite likely, consists of information Purolite has obtained during discovery.[3] The source of the information disclosed in the letter is crucial to determining if the First Amendment precludes the court's ability to restrain Purolite's disclosure.

The Third Circuit has held that the First Amendment does not limit a court's ability to restrict parties from disclosing information obtained through discovery. *See Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1119 (3d Cir. 1986). Instead, such restrictions should be evaluated under Fed. R. Civ. P. 26(c)'s good cause standard for protective orders. *See Cippollone*, 785 F.2d at 1119-20. This result is based upon the Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). *See Cippollone*, 785 F.2d at 1119-20. In *Seattle Times*, the Court reviewed a protective order issued pursuant to Fed. R. Civ. P. 26(c) which barred Seattle Times, a newspaper, from publishing certain information it obtained through discovery in a defamation lawsuit filed against it by Rhinehart. 467 U.S. at 27. However, the protective order did not preclude the release of any information Seattle Times obtained through means other than discovery. *Id.* & n.8.

*Seattle Times* and *Cippollone* do not specifically address how to determine a court's ability to restrain

_____

[3]The undersigned has overseen discovery in this case since March 2006 and has issued dozens of orders concerning discovery since that time. Although the current discovery deadline was August 3, 2007, Defendants have been ordered to produce some documents by August 10, 2007 and the parties' correspondence with the court indicates that several depositions are planned for late August.

a litigant from disclosing information that was revealed in a public judicial hearing or in non-discovery related documents filed with the Clerk of Court.  This distinction is important because the public has a presumed right of access to this information under the common law and the First Amendment.  *See Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) (common law); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) (First Amendment).  The public's First Amendment right of access while not absolute, *Publicker*, 733 F.2d at 1070, may be restricted only if "the denial serves an important governmental interest and . . . there is no less restrictive way to serve that governmental interest." *Id.*

## A.      Right to Public Access Information

Virtually all of the information contained in Mr. Brodie's letter was disclosed at the September 23, 2005 hearing before Judge Rufe or is contained in the complaint and amended complaint.  The public has a presumed right of access to this information.  *Leucadia*, 998 F.2d at 161; *Publicker*, 733 F.2d at 1070.  Consistent with the First Amendment, the court may only bar Mr. Brodie from disclosing this information if "denial serves an important governmental interest and  . . . there is no less restrictive way to serve that governmental interest."[4]  *Publicker*, 733 F.2d at 1070.

Defendants maintain that the important governmental interest at stake is preventing Purolite from influencing potential witnesses not to cooperate with the subpoenas and, by extension, making them unwilling witnesses at trial.  Defs.' Mem. of Law at 4, 10-11.  If Mr. Brodie's letter encouraged subpoena recipients not to comply with the subpoenas or to refuse to testify on behalf of Defendants, the court would readily sanction Purolite for thwarting Defendants' First Amendment right to court access.  *See Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd.*, 461 U.S. 731, 741 (1983) (the right to court access is an aspect of the First Amendment right to petition the government for redress of grievances).  However, Mr. Brodie's letter merely instructs the recipient to call Defendants' lawyer to ask any questions about the subpoena.  The court does not view this as an effort to discourage the recipients from complying with the subpoenas.[5]  Nor does the

---

[4]The court will address the First Amendment and not common law right of access.

[5]Defendants maintain that one-quarter of the companies subpoenaed have not yet responded to the subpoenas. Defs.' Mem. of Law at 10.  The court has no way of knowing whether this lack of response is due to Mr. Brodie's letter nor can the court say whether a 75% response rate for third-party subpoenas is atypical.  The responses may simply be tardy.

letter suggest to recipients that, if asked testify on Defendants' behalf, they ought to refuse.  Absent such tendency, there is simply no legitimate, let alone important, governmental interest in restraining Purolite from informing its customers of publicly available information about this lawsuit.  To the extent Mr. Brodie's letter contains information made public at the September 23, 2005 hearing before Judge Rufe or in pleadings, the motion for sanctions is denied.

### B.   Discovery-Related Information

With respect to discovery-related information contained in Mr. Brodie's letter, the court can restrain Purolite from speaking if there is good cause to do so.  *See Cippollone*, 785 F.2d at 1119-20.  Good cause as defined in Fed. R. Civ. P. 26(c) encompasses annoyance, embarrassment, oppression or undue burden or expense.  The only good cause Defendants have identified is their belief that the letter influences potential witnesses not to cooperate with the subpoenas and, by extension, makes them unwilling witnesses at trial.  Defs.' Mem. of Law at 4, 10-11.  As explained previously, the court does not believe that the letter causes either of these effects.  Therefore, Defendants have failed to identify good cause to justify court restraint on the public discovery contents of Brodie's letter.

## IV.   Purolite's March 7, 2007 Press Release

The court also notes that, on March 7, 2007, Purolite issued a press release which contains virtually the same information disclosed in Mr. Brodie's letter.  In fact, the press release contains even more information than the letter in that it identifies all individual Defendants by name and states Purolite's belief that Defendant Sachdev signed a contract with Thermax, prior to leaving Purolite, in which he pledged to develop products and technologies for Thermax that he had worked on at Purolite.  The press release remains accessible on Purolite's website and, hence, could potentially influence anyone, including subpoena recipients, who accesses the website.  Thus, any injury to Defendants caused by Mr. Brodie's letter would be only marginally incremental over that caused by the press release.  For this reason, sanctioning Purolite for the letter would be pointless.

An implementing order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRO-TECH CORPORATION t/a | : | CIVIL ACTION |
| THE PUROLITE COMPANY, *et al.* | : | |
| | : | |
| v. | : | |
| | : | |
| THERMAX, INC. d/b/a THERMAX | : | |
| USA LTD, *et al.* | : | NO. 05-2330 |

## ORDER

**AND NOW**, this 10th day of August, 2007, upon consideration of Defendants' Emergency Motion for Sanctions (Document No. 175), Plaintiffs' Memorandum in Opposition thereto (Document No. 186), Defendants' Reply Memorandum of Law (Document No. 193), Plaintiffs' Sur-Reply in Opposition (Document No. 201), and for the reasons contained in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants' Motion is **DENIED.**

**IT IS SO ORDERED**.

**BY THE COURT**:


*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE
