

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

220

BRO-TECH CORPORATION t/a
THE PUROLITE COMPANY, et al.,
     **Plaintiffs,**

v.

THERMAX, INC. d/b/a THERMAX
USA LTD, et al.,
     **Defendants.**

:
:
:
:
:
:
:
:
:
:

**CIVIL NO. 05-CV-2330**

FILED

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                       **September 4, 2007**

      Presently before the Court is Defendant Narvinder Sachdev's Motion for an Anti-Suit Injunction. Through this Motion, Sachdev asks the Court to enjoin Plaintiffs from pursuing an action that they have brought against him[1] in the High Court of Justice, Chancery Division, in England. The Court must now consider and decide whether an anti-suit injunction, which would ostensibly limit the authority of the High Court inasmuch as it would limit Plaintiffs' ability to pursue their cause,[2] is appropriate in this case.

## I. BACKGROUND

      In May 2005, Plaintiffs instituted their action in this Court against Thermax Inc. and Thermax LTD (collectively "Thermax"), and a number of individual Defendants. The suit is based on the alleged theft of confidential information and trade secrets by several of Plaintiffs' former

---

[1] The suit that Plaintiffs have filed in the English court names multiple Defendants: (1) Thermax Europe Ltd.; (2) Thermax Limited (India); and (3) Narvinder Sachdev. Sachdev's Motion asks only that the Court enjoin Plaintiffs from pursuing their action against him; it does not seek similar relief for the other Defendants.

[2] See Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 887 (3d Cir. 1981), aff'd, 456 U.S. 694 (1982) ("[T]here is no difference between addressing an injunction to the parties and addressing it to the foreign court itself.").

employees. Sachdev is named for his alleged involvement in the theft. According to Plaintiffs, Sachdev sought and gained access to several secretive processes that Plaintiffs used to manufacture ion-exchange resins, and provided that confidential information to Thermax. Plaintiffs have asserted against Sachdev claims for breach of contract, breach of fiduciary duty, trade-secret misappropriation, and other related claims.

Since the suit was filed, the parties have undertaken extensive, and often combative, discovery. Many depositions have been taken and large numbers of documents have been exchanged. While the parties have vigorously litigated numerous discovery disputes and discovery deadlines have been extended multiple times, the case has continued to move forward in this Court.

During these intensive discovery efforts, and over two years after suit was filed in this Court, Plaintiffs commenced a parallel foreign action against Thermax and Defendant Sachdev. On June 22, 2007, Plaintiffs filed their action in the English High Court of Justice (the "High Court"), asserting claims based on the same alleged activity that forms the basis of the action before this Court.[3]

The parties immediately began briefing the issues. In his papers, Sachdev argues that there exists no reasonable rationale for pursuing the English action against him. He paints a grim picture of his plight as a result of the lawsuit pending before this Court. According to Sachdev, his life has been turned upside down as his personal and business lives have been destroyed. He claims that he is insolvent and cannot finance a defense of the English action or even challenge the High Court's jurisdiction over him. Based on his inability to defend himself in the High Court, he believes

---

[3] During the course of this Memorandum Opinion, the Court will refer to the suit pending in the High Court as "the English action."

that Plaintiffs will attempt to use a default judgment in that court to strip this Court of its jurisdiction over the claims against him. Ultimately, he argues, Plaintiffs will assert the default judgment as a *res judicata* bar to any defenses that he wishes to present in this action. Based on this anticipated tactic, he argues that an anti-suit injunction is permitted under Third Circuit law.

Plaintiffs oppose the Motion by arguing that the Third Circuit has adopted a very restrictive approach to anti-suit injunctions, particularly in the context of a proceeding instituted in the court of a foreign nation, and that this case does not fall within the very small group of cases in which an injunction would be appropriate. First, Plaintiffs argue that the actions are not entirely duplicative; while there is some overlapping of claims, there are some claims unique to the action in this Court. More importantly, Plaintiffs point to the Third Circuit's test for whether an anti-suit injunction should be entered, and argue that this case simply does not satisfy the test.

As the parties were completing their briefing on the issues presented by Sachdev's Motion, Plaintiffs moved the High Court to enter default judgment against Sachdev based on his failure to defend himself in the English action. Sachdev immediately asked this Court to enter a temporary restraining order against Plaintiffs so that the Court could consider and decide the pending Motion.

On August 29, 2007, the Court held a recorded conference with counsel for all parties. At this conference, counsel explained their contrasting positions on whether an anti-suit injunction should issue. Counsel for Sachdev continued to insist that if the English action were permitted to proceed, this Court would be stripped of its jurisdiction over the claims against Sachdev in this action. Plaintiffs' counsel continued to deny the validity of that assertion and, citing Third Circuit precedent, insisted that the Court does not have the authority to enter an anti-suit injunction in this

-3-

case.  Ultimately, Sachdev asked the Court to, at a minimum, enter a temporary restraining order against Plaintiffs until it can decide the Motion for an Anti-Suit Injunction.[4]

Because the Court has acted quickly in this matter, it is prepared to consider Sachdev's Motion for an Anti-Suit Injunction at this time; there is no need for the Court to consider Sachdev's request for a temporary restraining order.  As such, the Court will review Sachdev's Motion.

## II. DISCUSSION

### A. The Standard for Entering an Anti-Suit Injunction

The Third Circuit Court of Appeals has established a test for determining whether an anti-suit injunction should be entered to restrain the advancement of a foreign parallel proceeding. In General Electric Co. v. Deutz,[5] the Third Circuit adopted the restrictive approach, advising the district courts that it would "rarely permit[] injunctions against foreign proceedings."[6]  Under this restrictive approach, domestic and foreign parallel proceedings may ordinarily proceed simultaneously, "at least until one has reached the stage where its ruling becomes res judicata."[7] District courts may appropriately enjoin "foreign parallel proceedings only to protect jurisdiction or

---

[4] At this conference, the Court was made aware of several other important facts.  For example, Defendants informed the Court that a lawyer for Plaintiffs in the United Kingdom made misstatements to the High Court of Justice in a Witness Statement filed with that court on July 10, 2007.  The misstatements included affirmative representations that the relief sought by Plaintiffs in this Court was limited to the territories of the United States, and that the preliminary injunctive relief entered by this Court restrains only Thermax Inc. and Defendant Sachdev. Plaintiffs' U.S. counsel assured the Court that these misrepresentations would be cured forthwith.

[5] 270 F.3d 144 (3d Cir. 2001).

[6] Id. at 160–61.

[7] Id. at 157; see also Compagnie des Bauxites, 651 F.2d at 887.

an important public policy."[8] These exceptions to the ordinary tendency against issuing anti-suit injunctions are to be interpreted narrowly.[9]  Vexatiousness, harassment, or inconvenience to the parties are usually insufficient grounds upon which a court may enjoin a foreign parallel proceeding.[10]  Likewise, duplication of issues in the two suits is insufficient to justify an anti-suit injunction.[11]

While there has been scant litigation clarifying how the Third Circuit expects district courts to apply the restrictive test set forth in Deutz, its decisions have reflected its serious concern for comity, its respect for the sovereignty of other courts, and its faith in the ability of other courts to handle parallel proceedings in a fair and just manner without interference.[12]  Its emphasis on comity is especially significant in the international context.[13]  As the Court noted in Deutz, "the proper exercise of comity demonstrates confidence in the foreign court's ability to adjudicate a dispute fairly and efficiently. . . . Failure to accord such deference invites similar disrespect for our judicial proceedings.  Reciprocity and cooperation are worthy goals of comity."[14]  The Third Circuit's adoption of the restrictive approach and its emphasis on comity suggests its desire to avoid

---

[8] Deutz, 270 F.3d at 161.

[9] See Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V., 310 F.3d 118, 127 (3d Cir. 2002).

[10] See Deutz, 270 F.3d at 161.

[11] Stonington, 310 F.3d at 127 (discussing Compagnie dex Bauxites, 651 F.2d at 887).

[12] Deutz, 170 F.3d at 161; see also id. at 160.

[13] See id. at 160 ("Although [comity] is a consideration in federal and state litigation, it assumes even more significance in international proceedings.").

[14] Id. at 161 (summarizing the Sixth Circuit's discussion of comity in Gau Shan Co. v. Bankers Trust Co., 956 F.2d 1349, 1355 (6th Cir. 1992)).

sending foreign courts the "'the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility.'"[15] Overall, the Third Circuit's jurisprudence instructs district courts to weigh comity heavily when considering whether an anti-suit injunction should issue.

## B.  The Propriety of an Anti-Suit Injunction in this Case

Considering the Third Circuit's emphasis on comity and reluctance to interfere with foreign proceedings absent extraordinary or aggravated circumstances, the Court is not convinced that an anti-suit injunction is appropriate in this case.  The Third Circuit's dictate in Deutz is clear: an injunction restraining the advancement of foreign proceedings should be entered only to protect this Court's jurisdiction or to protect an important public policy.  Neither of these rationales supports an anti-suit injunction here—the English action neither threatens to strip the Court of its jurisdiction over the instant action nor endangers an important public policy.

The issue of comity is at the forefront of the Court's analysis.  This Court has the utmost confidence in and respect for the High Court's ability to handle the matter before it in the appropriate manner.  So long as the High Court is informed of the ongoing nature of the instant litigation and the preliminary injunction previously entered by this Court—which enjoined all Defendants from using, misappropriating, or possessing any of Plaintiffs' information in *any* jurisdiction—the Court has great faith that the High Court will recognize the significance of the default-judgment motion before it, and determine whether it is presently appropriate to act on the

---

[15]  See Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 360 (8th Cir. 2007) (quoting Gau Shan Co., 956 F.2d at 1355).

motion.[16] As of yet, the judgment has not been obtained in the English proceedings; therefore, under principles of comity outlined in cases such as Compagnie des Bauxites and Deutz, this Court must allow the High Court to exercise its authority without interference.[17]

Even recognizing the significance of comity in the Court's analysis, Sachdev nonetheless insists that an injunction is warranted. His argument focuses on two major points: (1) that the English action is entirely duplicative of the instant action, and therefore it is unnecessary and vexatious; and (2) that Plaintiffs are pursuing the English action only to obtain a default judgment against him, and that the entry of default judgment in the English action will "usurp this Court's jurisdiction over the claims against [him]."[18]

As for the first point, the Third Circuit has explicitly held that duplication of issues, the vexatiousness of the parallel proceeding, and any inconvenience to the parties are insufficient grounds on which to issue an anti-suit injunction.[19] The Court will not question the propriety of Plaintiffs' tactic of naming Sachdev—who is almost certainly judgment-proof—in the foreign proceeding, and recognizes the fact that he may not have the financial resources to mount a defense in the English action; but neither ground warrants this Court's interference with the foreign proceeding. Sachdev has knowledge of the proceeding and the opportunity to participate by mounting a defense. He is choosing not to participate based on alleged financial constraints. Even

---

[16] Additionally, Sachdev argues that the High Court does not have personal jurisdiction over him, and therefore this Court should enjoin the proceedings in the High Court. The Court is confident, however, that the High Court is capable of addressing its own jurisdiction; Sachdev's argument does not provide a basis for this Court to inject itself into that proceeding.

[17] See Deutz, 270 F.3d at 157; Compagnie des Bauxites, 651 F.2d at 887.

[18] See Def.'s Mem. of Law in Support of Mot. for Anti-Suit Inj. [Doc. # 196-3], at 3.

[19] See Stonington, 310 F.3d at 127 (discussing Compagnie des Bauxites, 651 F.2d at 887); Deutz, 170 F.3d at 161.

if the English action is entirely duplicative, unnecessary, vexatious, inconvenient, and filed solely for the purpose of harassing Sachdev, and he truly cannot participate meaningfully in the foreign proceeding, these factors would be insufficient to justify an injunction of the type that he is seeking.

As for Sachdev's second point, the Court is convinced that its jurisdiction is not threatened by the English action, for several reasons. First, even if default judgment were to be entered against Sachdev in the English action, that entry would not strip this Court of its jurisdiction over the instant matter. As the Third Circuit has noted: "While it is true that res judicata can be applied to bar relitigation of claims previously decided on the merits, res judicata is . . . not a doctrine which would defeat subject matter jurisdiction . . . ."[20] Therefore, even if Plaintiffs attempted to assert the default judgment as a res judicata bar to any of Sachdev's defenses in this Court, the Court's jurisdiction would not be usurped.

Furthermore, even though a default judgment generally bars a party from subsequently relitigating an identical cause of action,[21] there is a recognized exception to this general rule when the rigid application of the doctrine would work an injustice.[22] The Third Circuit has confirmed that "the doctrine of res judicata is meant to foster judicial efficiency and protect [parties] from the oppression of repeated litigation, [but] it should not be applied inflexibly to deny justice."[23]

If Plaintiffs are pursuing their action against Sachdev in the High Court solely to

---

[20] Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1190 (3d Cir. 1989); see also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (noting that res judicata does not defeat the subject-matter jurisdiction of a federal court).

[21] See In re McMillan, 579 F.2d 289, 293 (3d Cir. 1978).

[22] See 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4426 (2d ed. 2002) (collecting numerous cases).

[23] Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972).

obtain a default judgment and assert that judgment against Sachdev in this Court, it is likely that application of the doctrine would be unjust. Proceedings in this case have been ongoing for over two years, requiring Sachdev to expend significant time, effort, and resources to defend himself in this Court. Nullifying his efforts and participation in the current proceeding based on his inability to defend himself in a suit filed overseas would likely work an injustice. Thus, it is likely that, even if the High Court chooses to enter a default judgment in the English action before the proceedings in this Court have culminated, the doctrine of res judicata will not bar Sachdev from having his day in this Court. Sachdev's liability should be determined on the merits of Plaintiffs' claims, not on his ability to travel overseas to defend an action that was filed more than two years after the action in this Court.

### III. CONCLUSION

Ultimately, application of the Third Circuit's restrictive approach to enjoining foreign proceedings reveals that an anti-suit injunction is not appropriate at this time. The Court's confidence that its authority will be respected by the High Court, and that the High Court will address the motion for entry of default judgment in a manner acknowledging the same principles of comity to which this Court has adhered in arriving at its decision, outweighs any fear that the instant proceeding will be negatively affected by the English action. Thus, at this time, the Court will decline to enter an injunction restraining Plaintiffs from pursuing their cause in the United Kingdom. This ruling, in addition to disposing of Sachdev's Motion, renders his lettered request for a temporary restraining order moot.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRO-TECH CORPORATION t/a** | : |
| **THE PUROLITE COMPANY, et al.,** | : |
| **Plaintiffs,** | : |
| **v.** | : |
| | : |
| **THERMAX, INC. d/b/a THERMAX** | : |
| **USA LTD, et al.,** | : |
| **Defendants.** | : |
| | : |

**CIVIL NO. 05-CV-2330**

FILED

MI_____KUNZ, Cler

By_____ Doc Clerk

## ORDER

      **AND NOW**, this 4th day of September 2007, upon consideration of Defendant Narvinder Sachdev's Motion for an Anti-Suit Injunction [Doc. # 196], Plaintiffs' Response thereto [Doc. # 202], Defendant's Reply [Doc. # 208], and Plaintiffs' Sur-reply [Doc. # 211], and in light of the relevant law, it is hereby **ORDERED** that Defendant's Motion is **DENIED** without prejudice.

      It is **FURTHER ORDERED** that Plaintiffs shall **FILE A COPY** of this Order and the attached Memorandum Opinion with the High Court of Justice, Chancery Division, within **seven (7) days** of the date of this Order.[1]

      It is so **ORDERED**.

BY THE COURT:

*Cynthia M. Rufe*

CYNTHIA M. RUFE, J.

---

[1] Plaintiffs shall file a copy of the Memorandum Opinion & Order in the action currently pending against Sachdev and the two Thermax entities, Case No. HC07C01654, as a supplement to their Motion for Default Judgment against Narvinder Sachdev, so that the High Court is sufficiently informed of the current status of the matter before this Court.