IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRO-TECH CORPORATION t/a | : | CIVIL ACTION |
| THE PUROLITE COMPANY, *et al.* | : | |
| | : | |
| v. | : | |
| | : | |
| THERMAX, INC. d/b/a THERMAX | : | |
| USA LTD, *et al.* | : | NO. 05-2330 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                          February 7, 2008

On January 18, 2008, the undersigned conducted an evidentiary hearing and oral argument ("January hearing") concerning two motions referred by the Honorable Cynthia M. Rufe. Prior to and during the hearing, the parties raised additional discovery-related matters: (1) Plaintiffs' request to quash third-party subpoenas served by Defendants; (2) Defendants' motion to compel Plaintiffs to produce draft report(s) prepared and/or reviewed by their experts, Lawrence S. Golden, Dr. Alexander Klibanov, and Robert C. DeCicco, in the course of producing final expert reports; (3) Plaintiffs' request to compel Defendants to produce forensically sound copies of numerous electronic data storage devices examined by defense expert Stephen Wolfe; and (4) Defendants' request that both parties supplement prior discovery responses concerning sales of each company's relevant products. Each issue will be addressed in turn.

**I.      Third-Party Subpoenas**

Defendants have served subpoenas on two third-party witnesses in Florida. These witnesses, former Purolite customers, apparently, are now Thermax customers. At the January hearing, Defendants represented that, as many as twenty-one (21) such customers may be deposed in order to preserve their testimony for trial. *See* N.T. 1/18/08 at 84, 87-91. Defendants stated that they have

interviewed these potential witnesses, who live out of state, via telephone and anticipate testimony favorable to them at trial. *Id.* at 89-91. Plaintiffs counter that the proposed depositions are for discovery purposes and not merely to preserve trial testimony. *See* N.T. 1/18/08 at 78, 81, 83-84. Plaintiff's further assert that Defendants do not know the substance of the putative witnesses' testimony. *Id.* at 81, 83-84.

The court accepts as credible Defendants' representation that they have screened the potential deponents and expect testimony favorable to them regarding why they switched suppliers. This assertion is adequate to allow the post-discovery deadline subpoenas herein at issue.[1] *See Puritan Inv. Corp. v. ASLL Corp.*, Civ. A. No. 97-1580, 1997 WL 793569, * 2 (E.D. Pa. Dec. 9, 1997). Hence, Plaintiffs' request to quash the third-party subpoenas is denied and Defendants shall schedule these trial depositions at mutually convenient times.

**II.     Drafts of Expert Reports**

Defendants seek to compel Plaintiffs to produce drafts of any expert reports Mr. Golden, Dr. Klibanov, and Mr. DeCicco reviewed or prepared in the course of finalizing their expert reports. *See* N.T. 1/18/08 at 100-02, 106. Plaintiffs resist production on the grounds that: (1) their experts have not retained these drafts; and (2) to the extent that drafts do exist, they are possessed by their counsel only, and, accordingly, need not be divulged to Defendants. *Id.* at 103-04, 107. At the January 18 hearing, Plaintiffs resisted production of said drafts, apparently, based upon attorney-client privilege. Thereafter, on January 25, 2008, Plaintiffs, in a letter to the court, relied upon the work product doctrine as applied in *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658 (3d Cir. 2003) to block production. Both grounds will be addressed.

---

[1] By contrast, in *Puritan*, which Plaintiffs cite, the court criticized the party that issued the post-discovery deadline subpoenas because it was unable to describe the information it sought to elicit or to indicate how expected information could support its case. *See Puritan*, 1997 WL 793569 at *2.

Attorney-client privilege does not shield the prior drafts of expert reports prepared for Plaintiff's from discovery. In 1993, Fed. R. Civ. P. 26 ("Rule 26") was amended, as regards requirements concerning production of information considered by a party's expert.[2] The advisory committee notes indicate that "information considered" by a party's expert that must be disclosed to the opposing party includes "any information that the expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005). Advisory committee notes to amended Rule 26(a)(2)(B) further indicate that a party should not be allowed to invoke privilege or any other protection from disclosure of such information to a party opponent. *Synthes,* 232 F.R.D. at 463. Therefore, the disclosure requirements of Rule 26(a)(2)(B), as amended, concerning disclosure of information considered by a party's expert override all claims of attorney-client privilege. *Synthes*, 232 F.R.D. at 464. Since the draft expert reports at issue herein were either generated by and/or reviewed by Plaintiff's experts in the course of generating their own expert reports, Rule 26(a)(2)(B) mandates their full disclosure to Defendants. *See Synthes*, 232 F.R.D at 463-64. Plaintiffs shall supply the prior expert reports, even if counsel have them. If the experts and/or Plaintiffs' counsel have destroyed or otherwise failed to preserve some or all of the prior drafts, Plaintiffs' counsel shall verify that fact in writing to Defendants' counsel.

The disclosure requirements of 1993-amended Rule 26(a)(2(B) also trump the work product doctrine. *See Vitalo v. Cabot Corp.*, 212 F.R.D. 478, 479 (E.D. Pa. 2002). Plaintiffs' reliance upon *Cendant* to resist production of draft expert reports is misplaced. *Cendant* involved a party's attempt to question an opposing party's witness at deposition concerning discussions the witness previously

---

[2] The court is aware that additional amendments to Rule 26 took effect on December 1, 2007. However, these amendments do not alter the relevant portions of Rule 26. *See* Advisory Committee Note to 2007 Amendment (indicating no substantive change to Rule 26(a)(2)(B), Rule 26(b)(3), or Rule 26(b)(4)(B)).

had with an expert retained by the opposing party; this expert, a jury consultant, had not been retained for the purpose of testifying at trial. *Cendant*, 343 F.3d at 660. The Third Circuit held that the provision for discovery of an expert who will not testify at trial, Rule 26(b)(4)(B), did not trump the work product doctrine contained in Rule 26(b)(3). *See Cendant*, 343 at 664-65. Notably, the court in *Cendant* neither considered nor decided whether or not Rule 26(a)(2)(B) trumped the work product doctrine preserved in Rule 26(b)(3) because it was not faced with discovery concerning a trial witness. As noted *supra* at 3, the 1993 advisory committee notes make it plain that the amended Rule 26(a)(2)(B) disclosure requirements trump any bar to disclosure of information an expert actually considered in the course of producing his report.[3] *See also Vitalo*, 212 F.R.D. at 479. Plaintiffs shall supply the prior expert reports, even if counsel have them. If the experts and/or Plaintiffs' counsel have destroyed or otherwise failed to preserve some or all of the prior drafts, Plaintiffs' counsel shall verify that fact in writing to Defendants' counsel.

### III.     Electronic Data Storage Devices

Plaintiffs seek production of forensically sound copies of the images of numerous electronic data storage devices Defendants' expert, Huron Consulting Group ("Huron"), has taken ("copies"). *See* N.T. 1/18/08 at 98-99, 111-13, 117-18; January hearing Ex. 6. As the court understands the issue, these electronic storage devices include the hard drives of Defendants' and Thermax's Michigan and India servers that Defendants' expert Huron imaged in May and June of 2007 and that Stephen Wolfe, Huron's employee, searched. *See id.* at 111-13, 117-18; Dep. of Stephen Wolfe at 67-68, 145-46 (January hearing Ex. 4); January hearing Ex. 6. Plaintiffs argued at the January

---

[3] Notably, Plaintiffs have not articulated any basis to support their premise that the draft expert reports contain attorney work product. Plaintiffs' attorneys, apparently, forwarded drafts of the Golden expert report to Dr. Klibanov and received drafts of the DeCicco expert report from Mr. DeCicco. *See* N.T. 1/18/08 at 100-01, 106. Plaintiffs never argued that they altered in any way the drafts of the Golden report before forwarding them to Dr. Klibanov, *see id.* at 102-04, or that the drafts of the DeCicco expert report were altered by counsel in any way. *See id.* at 107.

-4-

hearing that, under *Synthes,* these copies should be produced to them, because Defendants' expert, Stephen Wolfe, testified that, when he searched these images for the "Golden documents,"[4] he was directed by counsel not to explore certain potential "hits."[5]  *See* N.T. 1/18/08 at 111-13.

In letters dated January 29 and 31, 2008, Plaintiffs contend that production of the copies to them is their only means to verify that Defendants have complied with the Stipulation and Order of May 23, 2005 and the Order of September 30, 2005, which directed Defendants to locate any files taken by Defendant Narvinder Sachdev from Plaintiffs, return them to Plaintiffs, and then purge Plaintiffs' files from Defendants' electronic storage devices.  *See* Pls.' January 29, 2008 letter at 1-2; Pls.' January 31, 2008 letter at 1-2.  Inasmuch as Mr. Wolfe testified that he considered the electronic copies now being requested, for purposes of Rule 26(a)(2)(B), Defendants must provide copies to Plaintiffs, regardless of any claim of attorney-client privilege or work product doctrine. *See Synthes*, 232 F.R.D at 463-64; *Vitalo*, 212 F.R.D. at 479.

Plaintiffs argue that the images at issue made in May and June 2007 by Huron prove that Defendants violated prior court orders.  *See* Dep. of Stephen Wolfe at 67-68 (January hearing Ex. 4).  The May 23, 2005 Stipulation and Order required all Defendants to return to Plaintiffs' counsel all of Plaintiffs' files and then to purge said files from their possession, custody and/or control.  A September 30, 2005 order found that Defendant Sachdev had violated the terms of the May 23, 2005 Stipulation and Order.  The court, therefore, altered the May 23 order with respect to Sachdev only and ordered forensically sound copies of his hard drives and thumb drives to be produced to Plaintiffs, *without* requiring Defendants to purge any of Plaintiffs' files from those hard drives and

---

[4]The Golden documents are formulae for some of Plaintiffs' products that were found on Defendant Narvinder Sachdev's thumb drive as well as other electronic data storage devices in India.  *See* N.T. 1/18/08 at 112.

[5]By "hits," Mr. Wolfe meant that, by using search techniques, including key word searches, he and his staff located key words in numerous files.  *See* Dep. of Stephen Wolfe at 81-82.  Some hits were "false hits," that is, the search terms were found in files contained on the storage devices that were not the Golden documents.  *See id.* at 82-83.

thumb drives. Inasmuch as the September 30 order did not encompass the hard drives or servers of any Defendant except Sachdev, the May 23 Stipulation and Order stills controls all other data storage devices. If Defendants, in fact, have retained copies of Plaintiffs' files on their hard drives or servers, they have done so in violation of the May 23, 2005 Stipulation and Order.

Examination of the hard drives and servers is the only way to determine if a violation has occurred. Therefore, Defendants shall produce the forensic copies to Plaintiffs' counsel, on a CONFIDENTIAL-DESIGNATED COUNSEL ONLY basis, to confirm whether or not a violation of the May 23 court mandate has in fact occurred.

**IV.   Additional Sales Information**

Finally, Defendants requested that both parties supplement prior discovery responses concerning sales of their respective company's relevant products up to and through the end of 2007. *See* N.T. 1/18/08 at 69-70. Plaintiffs wish neither to provide nor receive supplementation. *Id.* at 71-72. In a January 25, 2008 letter, Defendants stated their intent to "supplement their disclosures of U.S. sales information to reflect sales that have taken place since their latest production of sales information on July 13, 2007." Defs.' January 25, 2008 letter at 1. Defendants also will "produce batch sheets to reflect the manufacturing process of all ion exchange resin products that have been manufactured since their October 5, 2007 production of batch sheets." *Id.* They request that Plaintiffs, likewise, supplement their disclosures. *Id.* Plaintiffs have refused to accept or provide additional sales information or batch sheets. *See* Pls.' January 29, 2008 letter at 4-6.

Defendants have failed expressly to justify the necessity for further supplementation. However, updated sales information and batch sheets of each party clearly is relevant to the issue of damages, so the court will order, as Rule 26(e)(1)(B) expressly provides, that Plaintiffs produce

updated United States sales information and batch sheets to Defendants through the end of 2007. Defendants need not produce updated sales or batch sheets to Plaintiffs who have insisted they neither need nor desire supplementation.

      An implementing order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRO-TECH CORPORATION t/a | : | CIVIL ACTION |
| THE PUROLITE COMPANY, *et al.* | : | |
| | : | |
| v. | : | |
| | : | |
| THERMAX, INC. d/b/a THERMAX | : | |
| USA LTD, *et al.* | : | NO. 05-2330 |

**ORDER**

AND NOW, this 7th day of February, 2008 for the reasons contained in the attached Memorandum, it is hereby **ORDERED** that:

1. Defendants may subpoena and conduct trial depositions of their third-party witnesses, so long as they schedule the depositions on dates convenient to Plaintiffs' counsel as well. Trial of this matter will not be postponed to complete these depositions.

2. On or before February 14, 2008, Plaintiffs' counsel shall produce to Defendants' counsel all draft expert reports generated or reviewed by Lawrence S. Golden, Dr. Alexander Klibanov, and Robert C. DeCicco, that were considered by these experts in the course of producing their own expert reports. These documents shall be marked CONFIDENTIAL-DESIGNATED COUNSEL ONLY. If the expert and/or Plaintiffs' counsel have destroyed or otherwise failed to preserve some or all of these documents, counsel shall verify, in writing, what is missing and why to Defendants' counsel by February 14, 2008.

3. On or before February 20, 2008, Defendants' counsel shall produce to Plaintiffs' counsel forensically sound copies of the images of all electronic data storage devices in Michigan and India which Defendants' expert, Huron Consulting Group ("Huron"), copied in May and June 2007 and which were reviewed by Stephen Wolfe, Defendants' expert. These forensically sound

copies are to be marked "CONFIDENTIAL-DESIGNATED COUNSEL ONLY."

    4.    On or before February 20, 2008, Plaintiffs shall produce to Defendants updated United States sales information and corresponding batch sheets through the end of 2007.

**IT IS SO ORDERED**.

                                **BY THE COURT**:

                              */s/ Carol Sandra Moore Wells*
                              CAROL SANDRA MOORE WELLS
                              UNITED STATES MAGISTRATE JUDGE