**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                    :
**BRO-TECH CORPORATION t/a**              :
**THE PUROLITE COMPANY, et al.,**         :
   **Plaintiffs,**                 :
  **v.**                                        :  **CIVIL NO. 05-CV-2330**
                                                    :
**THERMAX, INC. d/b/a THERMAX**          :
**USA LTD, et al.,**                             :
   **Defendants.**                :
_____:

## MEMORANDUM OPINION & ORDER

**Rufe, J.**                  **March 17, 2008**

     Defendants object to an Order of a Magistrate Judge requiring them to disclose

forensically sound images of certain data storage devices to Plaintiffs' counsel without any

limitation as to the scope of the disclosure or prior filtering for privileged or work-product

materials that the images might hold.  For the reasons that follow, Defendants' objections will be

sustained, and the Order will be overruled and modified in part.

## I.  BACKGROUND

     The Order in dispute issued February 7, 2008 ("the February 7 Order"), and states,

in relevant part:

> On or before February 20, 2008, Defendants' counsel shall produce to
> Plaintiffs' counsel forensically sound copies of the images of all electronic
> data storage devices in Michigan and India which Defendants' expert, Huron
> Consulting Group ("Huron"), copied in May and June 2007 and which were
> reviewed by Stephen Wolfe, Defendants' expert.  These forensically sound
> copies are to be marked "CONFIDENTIAL-DESIGNATED COUNSEL
> ONLY."[1]

_____

[1] Order of Feb. 7, 2008, at ¶ 3, Doc. No. 293.

As explained in the Memorandum Opinion accompanying the Order ("the Memorandum Opinion"), this production was required to permit a determination of whether Defendants had violated the Stipulation and Order entered in this matter on May 23, 2005 ("The May 23 Order").[2]  The May 23 Order, in turn, imposed an ongoing obligation on Defendants to return to Plaintiffs any Purolite files in their possession, and then to purge said files from their possession, custody and/or control.[3]  The February 7 Order makes no provision for the protection of any privileged materials that might be found on the India and Michigan data storage devices in question ("the India and Michigan servers").  By way of explanation, the Memorandum Opinion states, "[i]nasmuch as Mr. Wolfe testified that he considered [the India and Michigan servers] for purposes of [Federal Rule of Civil Procedure] 26(a)(2)(B), Defendants must provide copies to Plaintiffs, regardless of any claim of attorney-client privilege or work product doctrine."[4]

The February 7 Order issued in the context of a dispute around the deposition of Stephen Wolfe, an employee of Huron Consulting Group, a computer forensic services firm relied on by Defendants for both testifying and consultative expert work.  Wolfe testified that, at Thermax's direction, he had performed two distinct tasks.  The first was to produce an expert report regarding whether an array of Purolite information identified by Purolite's expert witness Lawrence Golden ("the Golden Exhibits") was located on a discrete set of data storage devices ("the Thermax devices"), after performing all necessary searches of images of the devices.[5]  This

---

[2] Mem. Op. of Feb. 7, 2008, at 5-6 ("Mem. Op.").

[3] Doc. Nos. 13 and 14.

[4] Mem. Op. at 5.

[5] Wolfe Dep. Tr. at 9:12-11:18, 84:17-85:24.

set of devices did not include the India or Michigan servers.[6]  The second task was to conduct electronic searches of images of Thermax's India and Michigan servers for evidence of Purolite files therein (which, in accordance with the May 23 Order, already should have been disclosed to Plaintiffs and purged).[7]  The two tasks were different in several ways.  Of primary importance for present purposes, each task involved searches of different devices, with the searches involved in the former task providing the exclusive basis of Wolfe's expert report, and the searches of the India and Michigan servers not informing his report in any respect.[8]  In other words, Wolfe performed the former task in his capacity as a testifying expert, and performed the latter task in his capacity as a consulting expert.

The instant dispute stems from Wolfe's testimony that in December 2007, after completing the review of only 5% of the hits yielded by the search of the India and Michigan servers for evidence of Purolite files, he was instructed to stop the job by Thermax's counsel.[9]

---

[6] Id.

[7] Id.

[8] Wolfe Dep. Tr. at 81:1-24, 84:19-85:24.  Numerous other factors differentiated Wolfe's two tasks.  To take two further examples, the materials searched for and search terms used in each task overlapped somewhat, but were not identical.  Compare Wolfe Dep. Tr. at 84:19-85:1 (for purposes of his expert report, Wolfe's searched the Thermax devices for matter drawn from the Golden Exhibits) and Wolfe Dep. Tr. at 78:13-81:19 (Wolfe searched India and Michigan servers for (1) the unique electronic "fingerprints" (or MD5 hash values) of all Purolite documents identified as such in this litigation; (2) the file names of the identified Purolite documents; and (3) certain search terms drawn from the Golden Exhibits).  Although the transcript is not perfectly clear on this point, it appears that when confronted with a "hit," or a match between a search term and data in the device being searched, Wolfe's response was different in the former task than in the latter.  In formulating his expert report, Wolfe opened electronically searched files that contained hits and evaluated their contents against the contents of the source of the search term(s) in question to determine the strength or accuracy of the match.  Wolfe Dep. Tr. at 134:15-22.  In contrast, with the exception of files related to the Golden Exhibits, see Wolfe Dep. Tr. at 144:4-146:1, hits in the India or Michigan servers apparently were not substantively evaluated by Wolfe, but were categorized and identified according to more superficial file characteristics, filtered for "false hits" by reference to external attributes, and submitted to Thermax's counsel for review of the actual content of the files.  Wolfe Dep. Tr. at 18:23-20:17.

[9] Wolfe Dep. Tr. at 144:4-146:8.

Following Wolfe's deposition, counsel for Plaintiffs and Defendants exchanged a series of letters, contesting whether Thermax was obligated to turn over copies of the India and Michigan servers to Purolite.  Ultimately, counsel were unable to resolve the point, and they appealed to the Magistrate Judge for a Court-imposed resolution.  To that end, after a hearing on the matter, the Magistrate Judge issued the February 7 Order.

Defendants raise two objections to the February 7 Order.  They argue that before any disclosure of the contents of the India and Michigan servers to counsel for Purolite occurs, Thermax has the legal right to filter the information to be disclosed in order to remove any attorney-client communications or work product material therein.  Defendants also argue that they should be required to disclose to Purolite (after a review for privileged materials) only files which yield hits during a targeted search of the India and Michigan servers for evidence of Purolite files, and not, as the February 7 Order requires, to disclose the entire content of the India and Michigan servers for Plaintiffs' counsel's review.

In opposing Defendants' objections, Plaintiffs assert that the February 7 Order should not be disturbed because inspection of Thermax's entire India and Michigan servers by Plaintiffs' counsel is the only way to ensure that no violation of the May 23 Order has occurred. Plaintiffs' further assert that Thermax waived any privilege it might have been able to claim in the information on the India and Michigan servers by disclosing the servers to Stephen Wolfe, who authored an expert report for Defendants, albeit one which did not in any way concern the content of the India or Michigan servers.

4

## II. DISCUSSION

The Court may overrule an order of a Magistrate Judge "involving a nondispositive discovery dispute only if the decision is clearly erroneous or contrary to law," or where the Magistrate Judge has committed an abuse of discretion.[10]

Here, in the February 7 Memorandum Opinion, it is explained that because "Mr. Wolfe testified that he considered the [servers], for purposes of Rule 26(a)(2)(B), Defendants must provide copies [of the servers] to Plaintiffs, regardless of any claim of attorney-client privilege or work product doctrine."[11]  In making this legal ruling, the Court invoked Federal Rule of Civil Procedure 26(a)(2)(B), which requires a party to disclose all material considered by its expert in formulating an expert report to opposing parties regardless of any privilege claims around the material, and also cited to case law for that proposition.

As the plain terms of the Rule make clear, however, Rule 26(a)(2)(B) only applies to material disclosed to and considered by an expert witness for purposes of his or her expert report and testimony – that is, information the expert receives or considers in his or her capacity as a testifying expert witness.  Commonly in litigation involving complex and specialized areas – such as computer forensics – a witness will perform dual roles, one as testifying expert, and one as consulting expert.[12]  Information exclusively considered by such an expert in his or her

---

[10] Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996).

[11] Mem. Op. at 5.

[12] See, e.g., U. S. Fidel. & Guar. Co. v. Braspetro Oil Servs. Co., No. 97 CIV. 6124JGKTHK, 2002 WL 15652, at *6, *8 (S.D.N.Y. Jan. 7, 2002); Messier v. Southbury Training Sch., No. 3:94CV1706, 1998 WL 422858, at *1-2 (D. Conn. June 29, 1998); B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y., Inc., 171 F.R.D. 57, 60 (S.D.N.Y. 1997).

capacity as consulting expert does not fall under Rule 26(a)(2)(B).[13]  A court should only give force to this differentiation of roles if it is convinced that the information considered for consulting expert purposes was not also considered pursuant to the expert's testifying function.[14] The normal discovery and privilege rules govern when materials considered by an expert exclusively in that individual's capacity as a consulting specialist must be disclosed to an opposing party.

　　　　In this instance, the Court must overrule as contrary to law that portion of the February 7 Order which compels Thermax to produce to Plaintiffs the entire India and Michigan servers for Plaintiffs' review, without regard for privilege, on Rule 26(a)(2)(B) grounds.  Wolfe repeatedly stated under oath that the India and Michigan servers were outside the scope of his expert report, and that he did not consider them in his testifying expert role.[15]  Instead, his expert report exclusively concerned the contents of other devices.  Because the information on the India

---

[13] Id.  The extent to which Rule 26(a)(2)(B) affects materials considered by a dual-purpose expert who serves as both testifying expert and consulting expert has not been addressed in this Circuit.  However, the Court is guided by the uniform rulings of district courts elsewhere that have decided the question.  See, e.g., S.E.C. v. Reyes, No. C 06-04435, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) ("A question thus arises about whether, and to what extent . . . privilege applies when an expert alternately dons and doffs the "privileged hat" of a litigation consultant and the "non-privileged hat" of the testifying witness.  In other words, does a litigant forfeit the privilege that would otherwise attach to a litigation consultant's work when he offers that expert as a testifying witness?  Every court to address this "multiple hats" problem has concluded that an expert's proponent may still assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as consultant.")(citing cases).  The law on this point is especially developed in the Second Circuit, and specifically, in a line of cases decided in the Southern District of New York.  See, e.g., Braspetro, 2002 WL 15652, at *8; B.C.F. Oil, 171 F.R.D. at 60; Detwiler v. Offenbecher, 124 F.R.D. 545, 546 (S.D.N.Y. 1989); Beverage Mktg v. Ogilvy & Mather Direct Response, Inc., 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983).  While the latter two cases were decided prior to the advent of Rule 26(a)(2)(B), they serve as the basis for the principle established in B.C.F. Oil and reiterated in Braspetro – that an expert may "wear two hats," one as a testifying expert, and one as a consulting expert, and documents disclosed to the expert which have no relation to the testifying expert role need not be produced under Rule 26(a)(2)(B).

[14] See B.C.F. Oil, 171 F.R.D. at 60.

[15] See, e.g., Wolfe Dep. Tr. at 81:14-19, 84:19-85:24.

and Michigan servers was not disclosed to or considered by Wolfe for purposes of his expert report, Rule 26(a)(2)(B) does not apply to the materials on those servers, and does not provide a legal basis for requiring their disclosure to Purolite.  However, the Court notes that Thermax's reasons for excluding the India and Michigan servers from the scope of Wolfe's expert report will be subjected to certain scrutiny during the immediate pretrial phase of this litigation, and will directly bear on the ultimate admissibility of Wolfe's testimony and report.

Notwithstanding the foregoing ruling, the Court wholly agrees with the Magistrate Judge that, in present circumstances, a significant measure of disclosure of the contents of the India and Michigan servers is necessary to ensure that Thermax has not retained Purolite information in violation of the May 23 Order.  The fact that Wolfe's electronic search of the India and Michigan servers using search terms designed to find Purolite information yielded numerous hits suggests the strong possibility (if not providing conclusive proof) that Purolite information is improperly contained in those servers.  Furthermore, the parties agree that some disclosure is now necessary, although they disagree on the proper scope of the disclosure.[16] Thus, disclosure of the images, to some extent, shall be required.

To determine the proper scope of the disclosure, the Court balances the relevant, contending interests.  On one hand, Thermax argues any disclosure must be limited so as to involve only files in which there is some reason to believe that improperly possessed Purolite information may be found.  Defendants concede that Purolite's counsel must be permitted to review such files, but contend there is no basis for disclosing the remainder of the India and Michigan server files, noting that these necessarily would include the files of, among others,

---

[16] Def.'s Sur-reply at 4.

persons in senior Thermax management positions.  Thermax therefore proposes that Purolite's counsel be permitted to review files, after filtering for privilege, that generate hits in a targeted electronic search for Purolite information in the India and Michigan server images, but nothing else.

Purolite counters that disclosure and review of the entire India and Michigan servers is necessary to ensure that no Purolite information is improperly in Thermax's possession.  Plaintiffs point out that this Court previously ordered full and unfettered disclosure of images of individual defendant Narvinder Sachdev's various electronic devices after it was demonstrated, in part through his own admission, that Sachdev had intentionally violated the May 23 Order by retaining electronic files containing Purolite information.[17]  Plaintiffs claim the present circumstance involves similar evidence of a violation by Defendants, and merits the same remedy of full disclosure.

The Court finds that there is not, at present, evidence of an intentional violation of the May 23 Order by Defendants, as would warrant full disclosure.  We know too little about the contents of the files that yielded hits during Wolfe's search of the India and Michigan servers to reach such a conclusion at this time.  Wolfe's search may have yielded false hits, or may otherwise have signaled files that were properly in Thermax's possession; conversely, the hits may indicate a Thermax violation.  Lacking clear evidence of an intentional violation, the Court will not impose the type of disclosure ordered previously in materially different circumstances involving Defendant Sachdev.  Instead, a more measured, yet still significant, disclosure will be required.

---

[17] Order of September 30, 2005, Doc. No. 42.

8

Another factor shaping this Order is that of privilege.  Thermax argues that filtering for privileged and work product materials should be permitted before any disclosure of Thermax information to Purolite's counsel occurs.  Purolite counters that Thermax waived any privilege in the materials disclosed to Wolfe by operation of Rule 26(a)(2)(B), an argument that has already been considered and rejected by the Court, and also because the materials were disclosed to and searched by Wolfe.  We assume for the present analysis that some files in Thermax's India and Michigan servers contain privileged or work product material.  When privileged communications or work product materials are voluntarily disclosed to a third party, the privilege is waived.[18]  An exception to this rule exists for disclosures to third parties which are necessary for the client to obtain adequately informed legal advice.[19]  Under this exception, Thermax has not waived its privilege or work product protections in the India and Michigan server files disclosed to Wolfe.  When searching these files, Wolfe was functioning in his capacity as "a non-testifying expert, retained by the lawyer to assist the lawyer in preparing the clients's case."[20]  Thermax did not waive any protections it might have in the India and Michigan servers by disclosing them to Wolfe for consultative expert assistance in this litigation.  Accordingly, this Order must provide for a privilege and work product filter.

----

[18] Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991).

[19] Id.

[20] In re Grand Jury Subpoenas, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003) (citing United States v. Kovel, 296 F.2d 918 (2d Cir. 1961) and 3 Joseph M. McLaughlin, Weinstein's Evidence § 503.01 (2d ed. 2003)); see also Westinghouse, 951 F.2d at 1423-24 (citing 8 Wigmore, Evidence § 2301 at 583 (McNaughton rev. 1961); McCormick, Evidence § 92 at 188); HPD Labs. v. Clorox Co., 202 F.R.D. 410, 414 (D.N.J. 2001).

### III.  CONCLUSION

In light of the foregoing analysis, the February 7 Order will be modified to require disclosure under a more limited protocol than was originally imposed.[21]  An appropriate Order follows.

---

[21] The changes and additions hereby made to the disclosure protocol in the Order are largely based upon the proposed form of order submitted by Defendants.  The modifications Defendants propose appear to the Court to be reasonably calculated to provide for a well-tailored search of the India and Michigan servers for Purolite information and also to protect any privileged or work-product material yielded in the search.  Through two rounds of briefing, Plaintiffs opted not to offer an alternative proposed order that would accomplish the same basic purpose of ensuring compliance with the May 23 Order while allowing for some limitation in scope and adequate privilege protection, instead arguing only for the complete disclosure of the India and Michigan servers notwithstanding any privilege claim, a position the Court has already determined to be unjustified under the applicable law.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                    :
**BRO-TECH CORPORATION t/a**         :
**THE PUROLITE COMPANY, et al.,**    :
         **Plaintiffs,**             :
         v.                          :        **CIVIL NO. 05-CV-2330**
                                    :
**THERMAX, INC. d/b/a THERMAX**      :
**USA LTD, et al.,**                 :
         **Defendants.**             :
_____:

## ORDER

      **AND NOW**, this 17th day of the February 7, 2008, upon consideration of the February 7, 2008 Order of the Magistrate Judge [Doc. No. 293], Defendants' Objections to the Order [Doc. No. 304], Plaintiffs' Response in Opposition [Doc. No. 308], Defendants' Reply Memorandum [Doc. No. 312], and Plaintiffs' Additional Memorandum in Opposition [Doc. No. 315], it is hereby **ORDERED** that Defendants' Objections are **SUSTAINED**, and that Paragraph 3 of the February 7, 2008 Order is amended as follows:

      (1)    Within **three (3) days** of the date of this Order, Defendants' counsel shall produce to Plaintiffs' computer forensic expert forensically sound copies of the images of all electronic data storage devices in Michigan and India of which Huron Consulting Group ("Huron") made copies in May and June 2007. These forensically sound copies are to be marked "CONFIDENTIAL – DESIGNATED COUNSEL ONLY";

      (2)    Review of these forensically sound copies shall be limited to:

            (a)    MD5 hash value searches for Purolite documents identified as such

in this litigation;

          (b)     File name searches for the Purolite documents; and

          (c)     Searches for documents containing any term identified by Stephen C. Wolfe in his November 28, 2007 expert report;

          (3)     All documents identified in these searches by Plaintiffs' computer forensic expert will be provided to Defendants' counsel in electronic format, who will review these documents for privilege;

          (4)     Within **seven (7) days** of receiving these documents from Plaintiffs' computer forensic expert, Defendants' counsel will provide all such documents which are not privileged, and a privilege log for any withheld or redacted documents, to Plaintiffs' counsel. Plaintiffs' counsel shall not have access to any other documents on these images;

          (5)     Each party shall bear its own costs;

          (6)     In all other respects, the February 7, 2008 Order shall remain in force.

          It is so **ORDERED**.

                                        **BY THE COURT:**
                                        **/s/ Cynthia M. Rufe**

                                        _____
                                        **CYNTHIA M. RUFE, J.**