**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRO-TECH CORPORATION t/a | : |
| THE PUROLITE COMPANY, et al., | : |
| Plaintiffs, | : |
| v. | :CIVIL ACTION NO.: 2:05-CV-02330-CMR |
| THERMAX INC. d/b/a THERMAX USA, | : |
| and THERMAX LTD. (India), et al., | : |
| Defendants. | : |

## ORDER

AND NOW, this ___ day of _____, 2009, upon consideration of plaintiffs'

Motion For Sanctions Against Thermax and the Individual Indian Defendants for Withholding

Documents in Discovery, it is hereby ORDERED that Purolite's Motion is GRANTED.

It is further ORDERED:

1.  Defendants shall reimburse plaintiffs for the actual costs and reasonable fees incurred as

    a result of defendants' failure to produce the Withheld Documents.

2.  Plaintiffs may inform the jury of defendants' failure to produce the Withheld Documents

    and that this Court sanctioned defendants for that conduct.

_____

Rufe, J.

4414128

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRO-TECH CORPORATION t/a** | : | |
| **THE PUROLITE COMPANY, et al.,** | : | |
| **Plaintiffs,** | : | |
| v. | :**CIVIL ACTION NO.: 2:05-CV-02330-CMR** | |
| **THERMAX INC. d/b/a THERMAX USA,** | : | |
| **and THERMAX LTD. (India), et al.,** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST**
**THERMAX AND THE INDIVIDUAL INDIAN DEFENDANTS FOR WITHHOLDING**
**DOCUMENTS IN DISCOVERY**

Plaintiffs Bro-Tech Corporation t/a The Purolite Company and Purolite International, Ltd. (collectively, "Purolite"), by and through their attorneys, respectfully move for sanctions against Thermax and the Individual Indian Defendants  as described more fully in the accompanying Memorandum of Law.  In support thereof, Purolite incorporates in full the attached Memorandum of Law.

WHEREFORE, for all of the foregoing reasons, Purolite respectfully requests the Court grant its Motion For Sanctions Against Thermax and the Individual Indian Defendants for Withholding Documents in Discovery.

Respectfully submitted,

/s/ _____
Joseph J. McGovern
Richard P. Limburg
Richard R. Harris
Sarah A. Shapiro
Jennifer E. Simon
OBERMAYER REBMANN MAXWELL
& HIPPEL LLP
One Penn Center - 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone:  (215) 665-3000

Dated: September 28, 2009          *Attorneys for Plaintiffs*

4414128

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRO-TECH CORPORATION t/a | : |
| THE PUROLITE COMPANY, et al., | : |
| Plaintiffs, | : |
| v. | :CIVIL ACTION NO.: 2:05-CV-02330-CMR |
| THERMAX INC. d/b/a THERMAX USA, | : |
| and THERMAX LTD. (India), et al., | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST THERMAX AND THE INDIVIDUAL INDIAN
DEFENDANTS FOR WITHHOLDING DOCUMENTS IN DISCOVERY**

**I.      INTRODUCTION**

On October 13, 2008 Purolite submitted a Motion to Compel and For Sanctions after

finding 3,157 documents that had been wrongfully withheld by Thermax during the discovery

phase of this case.  On March 31, 2009, the Court ruled that Purolite may use the "Withheld

Documents" in this litigation. Purolite's motion was then dismissed without prejudice.  See

March 31, 2009 Order, attached hereto as Exhibit "A."  Purolite now refiles its motion, focusing

on the most critical documents only.

Purolite seeks the actual costs it incurred as a result of defendants' wrongful withholding

of the documents and it requests permission to disclose to the jury the fact that defendants

wrongfully withheld the documents and were sanctioned for that misconduct.

Thermax and the Individual Indian Defendants withheld documents, despite Purolite's

having served requests for production that specifically called for the documents; despite a

subpoena issued by Purolite that commanded production of some of the documents; and despite

the June 29, 2006 Order of Magistrate Judge Wells directing that "[E]ach party shall produce to

its respective opponents every document it has in its possession, care, custody or control that is

relevant to the subject matter of this litigation."[1]  June 29, 2006 Order at ¶ 2, attached hereto as

Exhibit "B."

     The documents withheld from plaintiffs reveal, *inter alia*:

- That Pheroz Pudumjee and other high Thermax officials began to recruit Narvinder Sachdev as early as mid-2003; not late-2004, as they testified at deposition;

- That Dr. Michael P. Bigwood, Thermax's chemical expert, was previously employed by Thermax; a fact that was not previously disclosed to Purolite.  *Id*;

- The existence of previously undisclosed experiments and research and development activities conducted by Thermax which support Purolite's damage estimate.

- That Thermax was engaged in  manufacturing activities that indicate the use of Purolite's trade secrets and Thermax's plans for further use of Purolite's trade secrets;

- Production, sales and marketing activities at Thermax that are in material conflict with the reports and deposition testimony of Thermax's damages and chemistry experts;

- Systematic targeting of Purolite's customers for "conversion" to Thermax accounts.

     Thermax and the Individual Indian Defendants decided **not** to search the India and

Michigan servers in connection with discovery served on them.[2]  Yet, Thermax certified through

---

[1]    Paragraph 2 of Magistrate Wells' Order further required "each party to produce … every document … in its possession, care, custody or control that is reasonably calculated to lead to the discovery of admissible evidence, even if the document produced is not itself admissible at trial."  Magistrate Judge Wells also warned that in the event of a violation of her Order, "the court will consider the full panoply of sanctions provided by Fed.R.Civ P. 37 when determining what sanction against the offending party is appropriate." June 29, 2006 Order at ¶ 11, attached hereto as Exhibit "B."

[2]    **In 2008, at the initial stages of the search of the India and Michigan Servers under Special Master Weiner's supervision, he determined exactly what Thermax had previously done and what it had failed to do with respect to locating documents on those Servers.**  In his Memorandum and Order, dated July 29, 2008, he stated in that regard:

> "It became apparent that despite the mandates of the Stipulated Order, some portions of the India and Michigan Images were not searched electronically after the Stipulated Order was agreed to by the parties and entered by the Court, and other portions of the India and Michigan Images were only searched in a cursory fashion using a single search term.  Among other things:
> - **No** prior electronic searches were conducted of Defendant Thermax, Inc.'s business server from its office located in Michigan;
> - **No** prior electronic searches were conducted in the back-up copy of Defendant Thermax, Inc.'s business server from its office located in Michigan;
> - **No** prior electronic searches were conducted of the hard drive of Defendant **Amitabha Mukhopadhyay's** computer, or of his e-mail account;

2

its counsel that it had produced "all relevant documents in this matter, including relevant documents from the India and Michigan Images."  January 25, 2008 letter from Jacob Kaplan, Esq., counsel for Thermax, to the Honorable Carol Sandra Moore Wells, at p. 3, penultimate paragraph, attached hereto as Exhibit "C."

To represent that one has produced "all relevant documents" from the "India and Michigan Images" necessarily means one has searched those images.  As Special Master Weiner found, however, the India and Michigan Servers were never searched, prior to March 17, 2008, in such a way that one could say "all relevant documents" were "produced."  Defendants, through Mr. Kaplan, misled Purolite and this Court.

As a result of Thermax's failure to search for and produce documents on the India and Michigan Servers, Purolite conducted discovery from May 18, 2005 until the conclusion of the proceedings before the Special Master in September 2008 -- a period of 40 months - - without information it needed to properly prepare its case.  At no time during that period did Purolite have all information in the custody or control of Thermax that is relevant to this case.

Thermax failed to comply with its discovery obligations to plaintiffs' detriment. Thermax's conduct in discovery was a continuation of the conduct that gave rise to the litigation

- While some undefined searches were conducted by counsel of Defendants **Pheroz Pudumjee, Narvinder Sachdev and S.S. Shastri's e-**mail accounts, **no** prior electronic searches were conducted of the hard drives of their computers;
- While some undefined searches were conducted by counsel of the e-mail accounts for the head of research and development (Kiran Deshpande) and head of production (S. Krishnan) of Thermax, Ltd., and the Technical Liaison between Defendant Thermax, Inc. and Defendant Thermax Limited (Vivak Naik), **no** prior electronic searches were conducted of the hard drive of their computers; and
- The **only** search that was conducted of the share space of Defendant Thermax Limited Chemical Division's server from its office that is located in India was running a single search term ('Purolite') on that server, without any type of "wildcard" or Boolean commands."

July 29 Order, attached hereto as Exhibit "D." (emphasis added); March 17, 2008 Order, attached hereto as Exhibit "E."

itself and the conduct that damaged Purolite—deception, cover up, disregard for the law and contempt for the rules both in and outside the federal courthouse.

Fairness dictates that Thermax, not Purolite, bear the consequences of its misconduct. According, Purolite respectfully requests an order directing Thermax to pay the legal and other professional service providers' fees and costs it incurred in: 1) obtaining the Order to search the India and Michigan Servers; 2) locating the documents on the Servers (including the costs of Master Weiner's services and forensic experts' fees and costs incurred by Purolite); 3) obtaining the Court's permission to use the withheld documents; and 4) bringing this motion. Purolite also seeks permission to disclose to the jury Thermax's failure to produce the withheld documents and the fact that Thermax was sanctioned for that conduct.

## II.     RELEVANT PROCEDURAL BACKGROUND

On May 20, 2005 the parties, being at that time Purolite, Thermax, Inc., and Narvinder Sachdev executed, and the Court approved, a Stipulated Temporary Restraining Order that, among other things, "enjoined and restrained" defendants from:

> misappropriating or improperly acquiring or disclosing Purolite's
> trade secrets and/or confidential information … [and further ordered]
> [d]efendants … to return to Purolite's counsel any and all records,
> documents and/or information, whether in original, copied,
> computerized, handwritten or any other form, and to purge any and
> all information from their possession, custody or control within 24
> hours of notice to Defendant or his counsel of the terms of this
> Order, provided, however, that any information so purged shall be
> printed prior to purging and be returned to Purolite.

Stipulated TRO, attached hereto as Exhibit "F."

On August 1, 2005, Purolite amended its complaint by adding a second federal cause of action and adding Thermax, Ltd. (India) and the Individual Indian Defendants, among others. On September 12, 2005, Purolite moved for an order to show cause against

Narvinder Sachdev.  A hearing was held on September 23, 2005.  On September 30, 2005

this Court issued an Order holding Sachdev in contempt for violating the Stipulated TRO.

September 30, 2005 Order, attached hereto as Exhibit "G."

At that time, the Court expanded the scope of the injunction to include the newly-

named defendants and enjoined and restrained them from "in any way using,

misappropriating or possessing any Purolite information."

On March 1, 2006, the Court ordered "discovery on all issues to commence

immediately."  March 1, 2006 Order, attached hereto as Exhibit "H."   It also referred the

case to Magistrate Judge Wells for management of discovery.  March 1, 2006 Order,

attached hereto as Exhibit "H."

Prior to March 2006, Purolite served six sets of requests for production of

documents on Thermax; and one set each on the Individual Indian Defendants.  Between

March 1, 2006 and August 3, 2007 Purolite served 11 sets of requests for production of

documents on Thermax and one set each on the Individual Indian Defendants.  Plaintiffs'

Requests for Production directed to Thermax Inc., Thermax Ltd. and each of the Individual

Indian Defendants, along with selected Responses of Thermax and each of the Individual

Indian Defendants, are attached hereto as Exhibit "I."

On March 31, 2006, Thermax Ltd. and Thermax Inc. served answers and objections

to Purolite's Third Request for Production of Documents.  Request Number 26 of

Purolite's third request sought "all documents related to the claims, defenses and damages

in this case."  Thermax responded as follows, "Subject to the general objections and

reservation of rights set out above, Thermax will produce any such documents in its

possession, custody or control."  *Id*.

Also on March 31, 2006 each of the Individual Indian Defendants served answers and objections to Purolite's First Request for production of Documents.  Request Number 19 in the requests served on each Individual Indian Defendant sought "all documents related to the claims, defenses and damages in this case."  Each of the Individual Indian Defendants responded as follows, "Subject to the general objections and reservation of rights set out above [the named individual Indian defendant] will produce any such documents in his possession, custody or control." *Id.*

Throughout the succeeding months, the parties called upon Magistrate Wells many times to resolve discovery issues, large and small.  With respect to document production, the Magistrate Judge's rulings were uniformly consistent -- all relevant documents were to be produced.  Thus, throughout 2006 and 2007 Purolite believed it was receiving all relevant documents that were, responsive to its requests.

A.      **Plaintiffs Discover the Existence of the Michigan and India Servers**

On January 7, 2008, Thermax's computer expert, Stephen Wolfe, testified on deposition that in May and June of 2007, **two years** after the issuance of this Court's injunction requiring the return of Purolite information, Wolfe testified that Huron Consulting Group imaged computer hard drives belonging to key defendants and witnesses in this case, including Amitabha Mukhpodhyay, Kiran Deshpande, Pheroz Pudumjee, S.S. Shastri and Narvinder Sachdev.  These hard drives comprise the India and Michigan Servers.  *See* Deposition of Stephen Wolfe, 67:11-68:19, attached hereto as Exhibit "J."

Mr. Wolfe startled everyone on Purolite's side of the table when he further testified that he developed a search protocol intended to find evidence of Purolite files on the Servers.  *See* Memorandum Opinion and Order, dated March 17, 2008, p. 3, attached hereto as Exhibit "E."  Wolfe further testified that there were numerous "hits," suggesting the presence of Purolite

6

documents on the Servers.  Even more surprisingly, he testified that after completing review of only 5% of the hits yielded by the search, he was ordered to stop the search by Jacob Kaplan, Esq.

Purolite was flabbergasted to learn that Huron got hits for Purolite documents, but never completed a review those hits.  **This set of facts suggested to Purolite that in 2008, despite this Court's injunction of three years earlier, the India and Michigan Servers had not been searched.  And that, incredibly, turned out to be exactly the case.**

     B.    **Defendants Submit Affidavits Representing That Responsive Documents on the Michigan and India Servers Were Already Produced**

In the wake of Mr. Wolfe's deposition, Purolite sought production of the India and Michigan Servers.  On January 25, 2008, Thermax submitted a letter resisting production stating that "defendants in this case have … already made a production of all relevant documents in this matter, including relevant documents from the India and Michigan Images."  January 25, 2008 Letter from J. Kaplan to J. Wells, p. 3, attached hereto as Exhibit "C."

Kaplan's statement was accompanied by affidavits from Individual Indian Defendant S.S. Shastri and Ishrat Mirza, both stating that "all documents on these sources requested by Purolite have been produced." Declarations of Ishrat Mirza and S.S. Shastri, Exhibits 2 and 3 to January 25, 2008 Letter from J. Kaplan to J. Wells, attached hereto as Exhibit "C."

Focusing on the question of compliance, *vel non*, with the May and September 2005 injunctions, on March 17, 2008 the Court ordered a review of forensically sound copies of the India and Michigan Servers using a protocol prepared by Thermax.  Purolite reviewed 300,000 images that resulted from that search and discovered three documents that unquestionably

contained Purolite information, and which also called into question the completeness of the
record before the Court.

Trial was scheduled to begin within a matter of days of the discovery of these documents.
The discovery of Purolite information on the India and Michigan Servers three years after the
Stipulated TRO was entered was sufficiently troubling to cause the trial to be postponed and the
Court to refrain from publishing its rulings on summary judgment.

C.      **Purolite Uncovers Thousands of Relevant Documents Which**
        **Defendants Should Have Produced During Discovery**

On April 15, 2008, the Court Ordered Thermax to produce the contents of the India and
Michigan Servers for keyword searching to determine whether additional Purolite information
still remained on Thermax computers in violation of the Court's Orders.  April 15, 2008 Order,
attached hereto as Ex. "K."  Over 50,000 files were identified using the keywords.  When
Purolite's counsel began to review these documents, in addition to hundreds of documents
containing Purolite information, they uncovered thousands of documents responsive to Purolite's
discovery requests which had not been previously produced—the "Withheld Documents."

The Withheld Documents fall into five primary categories: conspiracy to recruit Purolite
employees; Purolite litigation-related documentation; technical documentation indicating
Thermax's use of Purolite's formulae; financial documentation supporting Purolite's damages
estimate; and, documentation reflecting solicitation of Purolite's customers.  Although plaintiffs'
original Motion to Compel and For Sanctions covered the thousands of documents withheld from
plaintiffs, plaintiffs now focus the Court's attention on representative examples from each
category to highlight the nature of the discovery violations committed by Thermax.

### 1.    <u>Recruitment of Purolite Employees</u>

At his January 11, 2007 deposition, Pheroz Pudumjee, a member of the Board of Directors of both Thermax Inc. and Thermax Ltd., testified that a meeting of the Thermax, Inc. board in Edison, New Jersey in the fall of 2004 was the first time he had heard of Narvinder Sachdev.  1/11/07 Deposition of P. Pudumjee, 80:1-81:14.

Documents F474-E00358587 (attached hereto as Exhibit "L") and F474-E00358588 (attached hereto as Exhibit "M") are an email and attachment from August 25, <u>2003</u> sent from Mr. Pudumjee, to Prakash Kulkarni, Managing Director of Thermax, Ltd. and Meher Pudumjee, Director of Thermax, Inc. and Chairperson of Thermax, Ltd., attaching a defined outline of Narvinder Sachdev's "proposed role and responsibility" at Thermax.

F474-E00358588, the attachment to the email, is entitled "Proposed Role & Responsibility for Mr. Sachadev [sic]."  The attachment identifies one of Mr. Sachdev's "roles and responsibilities" as "Devise & Lead Market Penetration Strategies" and "Participate in setting up Supply Chain Capabilities…wherever Thermax Capabilities are lacking" for "Uniform Particle Size Resins."   Uniform Particle Size resins were also included as a "deliverable" in Mr. Sachdev's ultimate employment contract with Thermax. Sachdev employment contract with Thermax, attached hereto as Exhibit "N."

F474-E00358588 discusses Mr. Sachdev "push[ing] through our pharmaceutical capabilities." Among the documents Mr. Sachdev took with him on his thumb drive from Purolite was Purolite's drug master file for cholestyramine, a pharmaceutical resin.  October 11, 2007 Expert Report of Lawrence Golden, p. 26, 61-64, attached hereto as Exhibit "O."

Finally, F474-E00358588 also discusses Mr. Sachdev:

- "[A]ssisting Thermax in scale up from the laboratory to commercial production";

- "Enable[ing] Thermax chemical division to produce high yield products through the right process know how for the US and other markets"; and

- "Creat[ing] standard operating procedures based on new processes and equipment."

In addition to an omnibus request for "All documents related to the claims, defenses, and damages in this matter" (Third Request For Production To Thermax, Inc. and Thermax, Ltd., n. 26, attached hereto as Exhibit "I") and the Court's June 29, 2006 Order requiring the production of all relevant documents, Purolite served at least two other, separate, requests which should have caused Thermax to produce this document.  Purolite requested:

- "Any and all documents concerning or relating to the solicitation for employment, recruitment, offer for employment, and/or hiring of Sachdev by Thermax." First Request For Production To Thermax, Inc. and Thermax, Ltd., n. 12, attached hereto as Exhibit "I"; and

- "All documents referring or relating to the recruitment and hiring of Narvinder Sachdev, James Sabzali, Nancy Gleasman, and Cindy Gresham." Third Request For Production To Thermax, Inc. and Thermax, Ltd., n. 16, attached hereto as Exhibit "I."

Despite these requests, Documents F474-E00358587 and F474-E00358588, found on Mr. Pudumjee's laptop, were never produced to Purolite.  Purolite would certainly have used these documents in deposing Mr. Sachdev and, had Purolite had access to documents F474-E00358587 and F474-E00358588, Purolite would have used them to challenge Mr. Pudumjee's representations that the fall of 2004 was his first introduction to Mr. Sachdev.

<b>2.   <u>Purolite Litigation Related Documentation</u></b>

a.   <u>Michael P. Bigwood's 2001 Project For Thermax</u>

Thermax proffers Michael P. Bigwood as their expert in ion exchange resin chemistry. Dr. Bigwood's curriculum vitae, included in his November 28, 2007 expert report and attached hereto as Exhibit "P," does not include any mention of having worked for Thermax.  At his deposition, Dr. Bigwood was asked specifically about his potential bias in undertaking his expert

analysis, and never mentioned having worked for Thermax.  January 14, 2008 Deposition of

Michael P. Bigwood, 45:4-12, attached hereto as Exhibit "Q."

Document F474-L00387122 is a contract and secrecy agreement between Thermax and

Dr. Bigwood for a project from 2001, attached hereto as Exhibit "R," and Document F474-

L00090815 is a 2001 report on Ion Exchange Resins and Adsorbents written by Dr. Bigwood for

Thermax, attached hereto as Exhibit "S."

As discussed, *supra*, Purolite made an omnibus request for "All documents related to the

claims, defenses, and damages in this matter" (Third Request For Production To Thermax, Inc.

and Thermax, Ltd., n. 26, attached hereto as Exhibit "I") and was under continuing obligation by

the Court's June 29, 2006 Order to produce all relevant documents.  In addition, Purolite

subpoenaed documents from Dr. Bigwood, including a request for "Any and all retention or

engagement letters and/or agreements to perform services by you on behalf of any defendant in

this matter."  December 10, 2007 Subpoena of Michael P. Bigwood, n. 3, attached hereto as

Exhibit "T."  Despite the obvious relevance of these documents to Dr. Bigwood's expert opinion,

neither Thermax nor Dr. Bigwood produced either of these documents.

**3.      Financial Documentation Supporting Purolite's Damages
Estimate**

Document F474-E00373877 (attached hereto as Exhibit "U") is a "Systems & Operations

Audit Report" of Thermax's "Research and Development Function" from April 2005 through

January 2006.  This document analyzes Thermax's research and development department and the

market potential and sales of, *inter alia*, Thermax's Uniform Particle Size project, Acrylic Anion

(A-107) project and High Activity Catalyst project.  Purolite made several document requests

specifically related to these products, including all research, sales and related information.  *See

e.g.,* Plaintiffs' Third Request for Production of Documents Directed to Defendant Thermax,

Inc., and Thermax, Ltd. # 4(f-h), attached hereto as Exhibit "I"; Purolite has also made several document requests regarding Thermax's research and development endeavors in general. *See, e.g.,* Plaintiffs' Eighth Request for Production of Documents Directed to Thermax, Inc. and Ninth Request for Production of Documents Directed to Thermax, Ltd., n. 3, 9, 11, 14, 18, attached hereto as Exhibit "I."  Despite Purolite's repeated requests for this information, Thermax failed to produce these documents.

Document F474-L00086359, attached hereto as Exhibit "V," is a PowerPoint presentation that includes cost analysis for Thermax's cation resins, including an analysis of the cost of producing cation resin in China, as opposed to India.  Purolite specifically requested documents regarding cost information for cations.  *See e.g.,* Plaintiffs' Ninth Request for Production of Documents to Thermax, Inc. and Tenth Request for Production of Documents to Thermax, Ltd., n. 1, attached hereto as Exhibit "I."  Further, Purolite bases some of its damages estimate on the cost of production of cations, and therefore this document is undoubtedly relevant, and should have been produced pursuant to the Court's June 29, 2006 Order.  Nonetheless, Thermax failed to produce this document to plaintiffs.

Finally, Document F474-E00377771, attached hereto as Exhibit "W," is a production report from September 2005 which contains a "Scrap Report," which details the amount of "scrapped" material Thermax generates.  Purolite's financial expert, Christopher Gerardi, has analyzed Thermax's "Scrap Reports" to determine yield improvement over time.  Purolite specifically requested "all Thermax Scrap Reports (see e.g. DFT0007059) from January 1, 2003 to present" in Plaintiffs' Ninth Request for Production of Documents to Thermax, Inc. and Tenth Request for Production of Documents to Thermax, Ltd., n. 4, attached hereto as Exhibit "I." Purolite bases some of its damages estimate on the yield improvement recognized by Thermax,

and therefore this document is undoubtedly relevant, and should have been produced pursuant to the Court's June 29, 2006 Order.  Nonetheless, Thermax failed to produce this document to plaintiffs.

      **4.      Technical Documentation Supporting Use of Purolite Information**

          a.      <u>Gel Cation Sulfonation</u>

Purolite claims that Thermax is using its recipe for gel cation sulfonation to reduce cycle time for its gel cation products.  *See* October 11, 2007 Expert Report of Lawrence S. Golden, p. 24, 30-36 attached hereto as Exhibit "Q."  Several documents which were not previously produced by Thermax were found on the Michigan and India servers, and support Purolite's claim that Thermax is using Purolite's gel cation sulfonation process provided by Mr. Sachdev, and has reduced its cycle time as a result.

Document F474-E00052787, attached hereto as Exhibit "X," is a January, 2005 "Pilot plant schedule" from Thermax's Management Information System, directly prior to defendants' joining Thermax.  This Pilot plant schedule shows no intention at that time to pursue the Purolite-type "low EDC" process.

Document F474-E00051599, attached hereto as Exhibit "Y," is a Thermax, Ltd. "Status Report" document which lists new products being scaled up from research and development to the pilot plant.  This document shows T-42 Na U, which uses the Purolite new low EDC process, as being "dropped in pilot" and "implemented on [manufacturing] plant directly" in May 2005. In other words, this document demonstrates that Thermax did not experiment with the new process at the pilot plant level, as would be expected with an entirely new process, but went directly into large scale manufacturing.

Furthermore, Dr. Bigwood has concluded that Thermax did not achieve cycle time reduction due to implementation of the Purolite low-EDC process.  December 31, 2007 Supplemental Expert Report of Dr. Michael P. Bigwood, ¶¶ 29-31, attached hereto as Exhibit "Z."  Document F474-E00055347, attached hereto as Exhibit "AA," shows an anticipated reduction in cycle time of great significance.  Lab cycle time with the Purolite low-EDC process is reduced from 14 hours to 9 hours, and the proposed plant cycle time with the "modified" process would be reduced from 20 hours to 12 hours.  Similarly, a table on Document F474-E00055349, attached hereto as Exhibit "BB," illustrates Thermax's anticipated reduction in cycle time very clearly.

In addition to a general request for "all documents related to the claims, defenses and damages in this matter" (Plaintiffs' Third Request for Production of Documents Directed to Defendant Thermax, Ltd., # 26, attached hereto as Exhibit "I"), Purolite made several document requests specifically related to gel cation sulfonation, requesting "all Cost Reduction/Cycle Time reduction" documents form January 1, 2003 to the present (Plaintiffs' Tenth Request for Production of Documents Directed to Defendant Thermax, Inc. and Twelfth Request for Production of Documents Directed to Defendant Thermax, Ltd, # 4, attached hereto as Exhibit "I") and "all document containing standard cost information" related to T-42 (Plaintiffs' Ninth Request for Production of Documents Directed to Defendant Thermax, Inc. and Tenth Request for Production of Documents Directed to Defendant Thermax, Ltd, # 1, attached hereto as Exhibit "I").  Purolite also requested research and development Management Information System documentation (Plaintiffs' Eighth Request for Production of Documents Directed to Defendant Thermax, Inc. and Ninth Request for Production of Documents Directed to Defendant Thermax, Ltd, # 14, attached hereto as Exhibit "I").   Despite Purolite's repeated requests for information

related to gel cation sulfonation and reduction in cycle time, Thermax failed to produce the above-identified documents.

    b. <u>High Activity Catalyst (T-6812 MP)</u>

   In challenging Purolite's damages estimate, Thermax's damages expert, Alan Friedman stated in his November 28, 2007 Expert Report that "I am informed by Jim Sabzali that Thermax never completed a sale of T-6812 and it is my understanding that it was last produced in November 2005."  November 28, 2007 Expert Report of Alan Friedman, ¶ 104, attached hereto as Exhibit "CC."

   Document F474-E00051599, attached hereto as Exhibit "DD," is a Management Information System status report which states "production has received order of 220 m3'' of T-6812 as of July, 2005.  Document F474-E00292266, attached hereto as Exhibit "EE," is a formal specification for T-6812 MP being distributed within Thermax as recently as May 8, 2007.

   Purolite requested that Thermax "produce all documents relating to the research, development and manufacture of Thermax's macroporous resin T-6812, including, but not limited to, all work instructions and process manufacturing instructions."  Plaintiffs' Eighth Request for Production of Documents Directed to Defendant Thermax, Inc. and Ninth Request For Production of Documents Directed to Defendant Thermax, Ltd., # 9, attached hereto as Exhibit "I."  Thermax produced neither document F474-E00051599 nor F474-E00292266 in response to this request or its ongoing obligations under the Court's July 29, 2006 Order.

    c. <u>Macroporous Gelatine Stabilizer System</u>

   Purolite claims that Thermax is using its suspension system for macroporous bead stabilization.  *See* October 11, 2007 Expert Report of Lawrence S. Golden, p. 24-25, 37-43, attached hereto as Exhibit "FF."  Document F474-E00371095, attached hereto as Exhibit "II,"

was not previously produced by Thermax and supports Purolite's claim that Mr. Sachdev provided Thermax with the Purolite suspension system for macroporous bead stabilization.

Document F474-E00371095 is an email from Kiran Deshpande, Thermax Ltd.'s head of Research and Development to defendant Amitabha Mukhopadhyay regarding the development of Thermax's new gelatine process.  Mr. Deshpande notes that the gelatine process was "done based on Inc's inputs."  Mr. Sachdev is presumably the source of "Inc's inputs."

In addition to a general request for "all documents related to the claims, defenses and damages in this matter" (Plaintiffs' Third Request for Production of Documents Directed to Defendant Thermax, Ltd., # 26, attached hereto as Exhibit "I") and the Court's June 29, 2006 Order to produce all relevant documents, Purolite made several document requests specifically related to Purolite information, including a request for "Any and all documents concerning or relating to Purolite's business operations, including but not limited to…production processes…" (Plaintiffs' First Request for Production of Documents Directed to Defendant Thermax, Inc. and Thermax, Ltd, # 5, attached hereto as Exhibit "I").  Despite Purolite's repeated requests for information and the clear relevance of this type of documents, Thermax failed to produce the above-identified documents.

d.    <u>Development of A-107</u>

Document F474-E00183020 (attached hereto as Exhibit "GG") includes a series of emails discussing the development of a new product for Thermax, A-107, a "type 1 acrylic gel." Purolite claims that Thermax used Purolite's formula to make A-107.  October 11, 2007 Expert Report of Lawrence S. Golden, p. 28, 71-74, attached hereto as Exhibit "Q".  Purolite made several document requests related to this claim, including all research, sales and related information.  *See e.g.* Plaintiffs' Third Request for Production of Documents Directed to

16

Defendant Thermax, Inc. and Thermax, Ltd., # 4(h) attached hereto as Exhibit "I").  Despite

Purolite's repeated requests for information, related to Purolite Thermax failed to produce this

document.

### 5.      Solicitation of Purolite Customers

Document F474-L00128052 (attached hereto as Exhibit "HH") outlines Thermax Inc.'s

initiatives for Fiscal Year 2005-2006.  This document discusses the "induction of new members

to Thermax, Inc. Chemical team," i.e. Defendants Narvinder Sachdev, Nancy Gleasman, Cindy

Gresham and Jim Sabzali, and the "$11 Million worth of prospects have identified for

conversion in FY0506" (sic).  These "prospects" include Purolite customers like Hague Water

Conditioning.  In addition, this document states "With the induction of a senior resource in

manufacturing [presumably Defendant Narvinder Sachdev], significant moves on cost reduction

and accelerated product development is expected.  Immediate focus would be towards reducing

costs of Cation resin, Development of Arsenic removal resin and piloting UPS technology."

Purolite requested documents related to the hiring of defendants Narvinder Sachdev,

Nancy Gleasman, Cindy Gresham and Jim Sabzali. Plaintiffs' Third Request for Production of

Documents Directed to Defendant Thermax, Inc., # 16, attached hereto as Exhibit "I."  Purolite

also requested documents referring or relating to Thermax's plans for expansion in the United

States market. Plaintiffs' Third Request for Production of Documents Directed to Defendant

Thermax, Inc., # 10, attached hereto as Exhibit "I". Finally, Purolite requested documents

referring or relating to reduction of costs of cation resin as discussed *supra*, development of

arsenic removal resin (Plaintiffs' Third Request for Production of Documents Directed to

Defendant Thermax, Inc., # 4(g), attached hereto as Exhibit "I") and UPS technology (Plaintiffs'

Third Request for Production of Documents Directed to Defendant Thermax, Inc., # 4(a),

attached hereto as Exhibit "I").  Despite Purolite's repeated requests for this information, Thermax failed to produce these documents.

Thermax also failed to identify or produce a regularly-published document "Inc. Spots" which lists Thermax, Inc.'s solicitation of Purolite customers.  Several editions of Inc. Spots were found on the Michigan and India Server Images and indicate that Thermax was targeting Purolite customers.  For example, Document F474-E00407168, attached hereto as Exhibit "II," states "Siemens successful in getting 1st sale of A107 (SBA I, acrylic, gel) to replace Purolite A850."  In addition, Inc. Spots document F474-E00378075, attached hereto as Exhibit "JJ" indicates that certain products have been put on hold "due to litigation."

In addition to a general request for "all documents related to the claims, defenses and damages in this matter" (Plaintiffs' Third Request for Production of Documents Directed to Defendant Thermax, Ltd., # 26, attached hereto as Exhibit "I") and the Court's June 29, 2006 Order to produce all relevant documents, Purolite made several document requests specifically related to Purolite information, including a request for "Any and all documents concerning or relating to efforts by Thermax to solicit for business purposes customers of Purolite since January 1, 2005." (Plaintiffs' First Request for Production of Documents Directed to Defendant Thermax, Inc. and Thermax, Ltd, # 3, attached hereto as Exhibit "I").  Despite Purolite's repeated requests for information and the clear relevance of "Inc. Spots" Thermax failed to produce them.

### D.     Plaintiffs Move To Compel Documents Withheld In Discovery

On October 13, 2008, Purolite submitted a Motion to Compel and For Sanctions regarding the 3,157 documents requested by Purolite during the discovery phase of this case and withheld by Thermax.  On March 31, 2009, the Court released the Withheld Documents for Purolite's use in the litigation, and dismissed plaintiffs' Motion to Compel and For Sanctions

without prejudice.  <u>See</u> March 31, 2009 Order, attached hereto as Exhibit "X."  Plaintiffs now resubmit their motion.

**III**.     **ARGUMENT**

> **A.     Thermax Violated Its Discovery Obligations By Failing To Search For And/Or Produce Highly Relevant Electronic Documents**

The obligation of litigants to search for and produce relevant, non-privileged electronic documents is well-established.  *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y 2003) (recognizing that "electronic documents are no less subject to disclosure than paper records.  This is true not only of electronic documents that are currently in use, but also of documents that may have been deleted and now reside only on backup disks."); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) (citation omitted); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); *Bills v. Kennecott Corp.*, 108 F.R.D. 459, 461 (D. Utah 1985) (citations omitted).  In recognition of this manifest discovery obligation, Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") was amended in 2006 to codify the duty of parties to produce all "reasonably accessible" electronically stored information.  *See* Fed. R. Civ. P. 26(b)(2); *see also* Fed. R. Civ. P. 26 Advisory Committee Notes (2006 Amendment) (providing that, under Rule 26(a), "a party must disclose electronically stored information as well as documents that it may use to support its claims or defenses").  As clarified by amended Rule 26, the **only** permissible basis for withholding responsive electronic discovery is "undue burden or cost" and, before this can justify a failure to produce, the withholding party must specifically identify the categories of

electronic discovery withheld and provide the seeking party an opportunity to compel production by demonstrating "good cause" for the discovery despite the burden it might entail.  *Id.*[3]

Accordingly, Thermax was required to produce all "reasonably accessible," responsive and non-privileged electronically stored information in response to Purolite's discovery requests. *See* Fed. R. Civ. P. 26(b)(2)(B) and Fed. R. Civ. P. 26(b)(2) advisory committee notes (2006). To the extent Thermax deemed certain electronically stored information "not reasonably accessible" based on excessive "burden and cost," it was required to "identify, by category or type, the sources containing potentially responsive information that it [was] neither searching nor producing . . . [with] enough detail to enable [Purolite] to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."  *Id.*  With this information, Purolite could have weighed the necessity of a motion to compel production of the information, a step that would have required Thermax to demonstrate any claims of "undue burden or cost" that it might incur in producing the information at issue. *Id.*

Here, Thermax failed to produce thousands of electronic documents and failed to raise any objections based on the inaccessibility of the electronic documents on the Michigan and India servers.[4]  To the contrary, Thermax falsely represented to the Court that it had conducted a

---

[3]      As noted, amended Rule 26 codified existing law and did not impose new discovery obligations.  Indeed, even prior to the 2006 amendments, existing law dictated that "electronic documents are no less subject to disclosure than paper records."  *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) (citations omitted); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); *Bills v. Kennecott Corp.*, 108 F.R.D. 459, 461 (D. Utah 1985). *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). To this end, the amendments themselves were explicitly intended to apply to pending lawsuits, like this one, which were in the midst of fact discovery when the amendments were enacted.  *See* Order of the Supreme Court of the United States adopting the amendments to Fed. R. Civ. P. 26 (providing that such amendments "shall take effect on December 1, 2006, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, <u>all proceedings then pending</u>") (emphasis added); *W.E. Aubuchon Co. v. Benefirst, LLC*, 245 F.R.D. 38, 41-42 (D. Mass. 2007) (finding it just and practicable to apply the amendments to an action commenced prior to the effective date of the amendment where case still in discovery stages).

[4]      Of course, any such claim would have been fruitless because the documents discovered during the review of the Michigan and India servers were maintained on Thermax's active hard drives and, as such, were readily

search of its servers and had produced "all" responsive documents.  *See* January 25, 2008 Letter

from J. Kaplan to J. Wells, p. 3, attached hereto as Exhibit "C."[5]  As discussed above, it is now

clear that Thermax improperly withheld relevant, responsive and "readily accessible" electronic

documents throughout the entire course of discovery in this matter.  That Thermax not only

would fail to produce such documents, but would affirmatively misrepresent to the Court that it

had conducted a full search and production, raises serious concerns about the integrity of

Thermax's entire production and about the integrity of Thermax itself, as presented by its

lawyers in these proceedings.

> **B.      A "Rolls Royce" Search Was Not Necessary To Identify The Withheld Documents**

Defendants argue that they should not be sanctioned because "neither side performed a

Rolls Royce search" and that their search was "99.94 to 99.98 percent accurate."  Defendants

Response to Plaintiffs' Motion To Compel and For Sanctions at 4.  Defendants are not using the

correct metrics, however.  First, the vast majority of the data (the 500 gigabytes cited by

defendants) is irrelevant to the instant matter.  Indeed, using keyword tools, Purolite narrowed

the search to 50,000 documents.  Assuming that approximately 3,000 of those 50,000 documents

were wrongfully withheld, that is an error rate of 6%.  In addition, in searching their own

electronic evidence items, defendants would have had the luxury of eliminating those areas of

the servers which were clearly irrelevant to this case, and then to cull the range of potentially

responsive documents yet further through targeted keyword searching.

---

accessible as a matter of law.  *See Zubulake*, 217 F.R.D. at 318-19; *W.E. Aubuchon Co., v. Benefirst, LLC*, 245 F.R.D. 38, 42 (D. Mass. 2007) (ranking categories of data from most to least "accessible" under the amended Rule 26 scheme and noting that active on-line data (such as hard drives), near-line data (such as storage devices like optical disks), and offline storage/electronic archives (such as removable disks or magnetic tape or media that is stored on racks or shelves) are considered "accessible").

[5]      This statement was supported by affidavits from defendant S.S. Shastri and Ishrat Mirza, both stating that "all documents on these sources requested by Purolite have been produced." (*See* Declarations of Ishrat Mirza and S.S. Shastri, Exhibits 2 and 3 to January 25, 2008 Letter from J. Kaplan to J. Wells, attached hereto as Exhibit "C.")

Moreover, defendants had the opportunity to confirm with their own employees that relevant documents had been produced.  It seems unlikely that none of the eleven key Thermax personnel, as well as in-house and outside counsel, that Thermax identified as having "diligently" searched for documents responsive to plaintiffs' discovery requests would have been entirely unaware of documents reflecting the prior engagement of Thermax's chemical expert Michael P. Bigwood or of prior efforts to hire Narvinder Sachdev.  Defendants Response to Plaintiffs' Motion To Compel and For Sanctions at 12-13.  That Thermax now expects the Court to believe that such omissions were the result of simply not doing a "Rolls Royce" search is insulting.  Defendants Response to Plaintiffs' Motion To Compel and For Sanctions at 23.

### C.      Thermax Should Be Sanctioned For Its Manifest Discovery Violations

Parties to litigation must be able to trust that their adversaries have conducted discovery in an honest and forthright manner.  Where, as here, that trust is violated, it undermines the entire truth-seeking process at the heart of the Federal Rules.  Thermax's discovery misconduct -- which resulted in significant prejudice to Purolite and unnecessary consumption of this Court's resources - - should not be ignored.    Likewise, Purolite should not have to pay for Thermax's misconduct.  Sanctions are warranted.

Federal Rule of Civil Procedure 37 ("Rule 37") permits the Court to sanction Thermax for its discovery violations.  Rule 37(c) states that if a party fails to meet its discovery obligations under Rule 26, "the court, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorneys' fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(B)(2)(A)(i)-(vi)."  *See* Fed. R. Civ. P. 37(c)(1).  Rule 37(B)(2)(A)(i)-(vi), in turn, provides a non-exhaustive list of permissible sanctions which

include, among other things, the granting of an order:  "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;  . . . striking pleadings in whole or in part; . . . dismissing the action or proceeding in whole or in part; . . . [or] rendering a default judgment against the disobedient party . . . ."  *See* Fed. R. Civ. P. 37(B)(2)(A)(i-vi).  Whether to award sanctions under Rule 37 (and, if so, the type of sanction to award) is a decision squarely within the Court's broad discretion.  *See Puricelli v. Houston*, No. 99-2982, 2000 U.S. Dist. LEXIS 7976 (E.D. Pa. June 12, 2000) (granting motion for sanctions to exclude expert testimony under Rule 37) (citations omitted).

Here, Thermax's misconduct was intentional; it caused prejudiced to Purolite; it consumed judicial resources; it included misleading statements; and it cost Purolite money.   At a minimum, the Court should award Purolite fees and costs its incurred as a result of Thermax's misconduct.  *See* Fed. R. Civ. P. 37(c)(A) (providing that a court "may order payment of the reasonable expenses, including attorneys' fees, caused by the failure" to produce documents required under Rule 26); *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991) (affirming a $1 million sanction for attorney's fees and stating that "an assessment of attorney's fees is undoubtedly within a court's inherent power" to sanction parties for discovery misconduct); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL Docket No. 1014, 1998 U.S. Dist. LEXIS 8019 (E.D. Pa. May 5, 1998)(awarding costs and fees for failure to produce documents); *Professional Securities Corp. v. National Royal Corp.*, No. 90-3951, 1991 U.S. Dist. LEXIS 18490 (E.D. Pa. Dec. 18, 1991)(awarding costs and fees for failure to answer interrogatories); *State Farm Mut. Auto. Ins. Co. v. Lincow*, No. 05-5368, 2008 U.S. Dist. LEXIS 18755 (E.D. Pa. Mar. 10, 2008)(awarding costs and fees for failure to comply with discovery

orders); *Tague v. Doctor's Assistance Corp.*, No. 07-4397, 2008 U.S. Dist. LEXIS 71901 (E.D. Pa. Sept. 17, 2008) (awarding costs and fees for failure to satisfy discovery obligations). Purolite's costs and fees include: legal fees; Master Weiner's fees; and forensic experts' fees incurred to locate and identify the Withheld Documents.  The Court should also permit Purolite to inform the jury of Thermax's and the Individual Defendants' failure to comply with the rules respecting discovery and the fact that this Court sanctioned them for their misconduct because Thermax's conduct is a continuation of and relevant to the conduct that gave rise to its liability in the first place.

## IV.    CONCLUSION

        For all of the foregoing reasons, Purolite respectfully requests that this Court enter an Order granting Purolite's Motion.

                            Respectfully Submitted,

                                /s
                            _____
                            Joseph J. McGovern
                            Richard P. Limburg
                            Richard R. Harris
                            Sarah A. Shapiro
                            Jennifer E. Simon
                            OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                            One Penn Center - 19th Floor
                            1617 John F. Kennedy Boulevard
                            Philadelphia, PA 19103
                            (215) 665-3000

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion for Sanctions was

served via ECF (without exhibits, filed separately under seal) and hand delivery upon the

following:

Daniel S. Bernheim, III, Esquire
Willentz Goldman & Spitzer, P.A.
Two Penn Center Plaza
Suite 910
Philadelphia, PA  19102

Harvey A. Sernovitz, Esquire
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

and via ECF and Federal Express upon the following:

David Zaslowsky, Esquire
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036

/s
_____
Sarah A. Shapiro

Date:  September 28, 2009

4414128

# EXHIBITS FILED
# UNDER SEAL

4414128